668 F.2d 654
 27 Fair Empl.Prac.Cas. 1169,
27 Empl. Prac. Dec. P 32,321
Roderick PLUMMER, Raymond W. Armorer, Neville F. Caesar,
Gwendolyn Moore, and all others similarly
situated, Plaintiffs-Appellants,
v.
CHEMICAL BANK, Defendant-Appellant.
Miguel A. Oppenheimer, Louis Straker, Herman L. Clark, James
Morrison, Theodore Ferguson and Herman I. Taitt,
Objectors-Appellees.
 Nos. 289, 298, Dockets 81-7528, 81-7546.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 30, 1981.
Decided Jan. 5, 1982.
 
 Judith P. Vladeck, New York City (Vladeck, Elias, Vladeck & Engelhard, Joseph J. Garcia, Richard S. Corenthal and Andrew Schulz, New York City, on the brief), for plaintiffs-appellants.
 Ronald M. Green, New York City (Epstein Becker Borsody & Green and Susan Schenkel-Savitt, New York City, on the brief), for defendant-appellant.
 Sidney B. Silverman, New York City (Silverman & Harnes, Joan T. Harnes and Martin H. Olesh, New York City, on the brief), for objectors-appellees Herman I. Taitt, Louis Straker, Herman L. Clark, James Morrison and Miguel A. Oppenheimer.
 Jose A. Rivera, Brooklyn, N. Y., for objector-appellee Theodore L. Ferguson.
 William L. Robinson and Beatrice Rosenberg, Washington, D. C., (Lawyers' Committee for Civil Rights under Law and Donna R. Lenhoff, Women's Legal Defense Fund, Washington, D. C., on the brief), amicus curiae in support of plaintiffs-appellants.
 Before LUMBARD, MOORE and VAN GRAAFEILAND, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Plaintiffs and the defendant both appeal from an order of the United States District Court for the Southern District of New York, Conner, J., 91 F.R.D. 434, denying approval of the proposed settlement of an employment discrimination class action. The appeal which we agreed to expedite is properly before us. Carson v. American Brands, Inc., 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). For reasons hereafter stated, we hold that the district judge did not abuse his discretion in rejecting the settlement as it was presented to him. However, we believe that appellants should be given an opportunity to amplify the record where the district judge found support for the settlement to be wanting and to correct any remediable defects that the district court may find to exist. This affirmance is without prejudice therefore to a renewed application by appellants, with such changes, if any, in substance and procedure as court and counsel deem proper[1] and with opportunity provided for proponents and objectors to establish such evidentiary matters as the district court deems necessary for making an informed decision.
 
 
 2
 On December 24, 1980, plaintiffs commenced this Rule 23(b)(2) class action alleging racial discrimination by the defendant Bank. The class which plaintiffs purported to represent consisted of all the black officials, managers, and professionals then employed by the Bank in New York City or who subsequently might become employed by the Bank in New York City. The complaint alleges that the defendant "differentiates between black and white employees with respect to all terms and conditions of employment, providing black employees with less favorable terms and conditions of employment." In addition to declaratory and injunctive relief against the alleged unlawful practices, the complaint demands that class members be promoted or assigned to the positions they would have occupied had there been no discrimination. It demands that the named plaintiffs be made whole for all lost earnings but seeks only salary adjustments for the remaining class members.
 
 
 3
 Judge Conner quickly discovered that the filing of the complaint signaled, not the start of a journey, but the end of the road. Plaintiffs' attorneys, acting as spokesmen for self-declared representatives of an uncertified class, had been negotiating with the Bank's attorneys for almost two years, and a compromise of their differences was imminent when the complaint was filed. On February 4, 1981, the Bank filed its answer denying all allegations of wrongdoing. On February 10, 1981, plaintiffs' attorneys presented the district court with a proposed settlement decree.
 
 
 4
 For the purposes of this opinion, a brief summary of the fifty-nine page decree will suffice. The decree adopts the complaint's description of the class, i.e., all blacks currently or subsequently employed in official, managerial, or professional capacities. It sets up three-year affirmative action goals which the Bank must make a good faith effort to meet, requires more intensive recruitment of blacks, validated tests for training programs, career counseling for class members and the appointment of an ombudsman to assist in resolving disputes.
 
 
 5
 The proposed decree makes no provision, however, for advancement in rank of any of the unnamed class members who, like the named plaintiffs, were allegedly discriminated against. It likewise makes no provision for back pay awards to any of the unnamed discriminatees. It provides instead for "Promotion" and "Scholarship" payments. During the three-year term of the decree, any unnamed class member who is promoted into or within any of certain identified job groups is to be paid a "Promotion Payment" if his years of service at the Bank exceed by two or more years the average total number of years of white employees who had received a similar promotion during the previous year. The amount of the Promotion Payment will vary from a minimum of $1,500 to a maximum of $4,500, depending upon the recipient's length of service in excess of the white average. The Bank's total liability for these payments is not to exceed $300,000. Each unnamed class member who is promoted into or within the official, managerial, or professional job groups, is entitled to a Scholarship Payment not to exceed $1,000, until a fund of $100,000 established by the Bank for this purpose is exhausted.
 
 
 6
 In contrast to these provisional awards, the decree provides that the four named plaintiffs are to receive immediate payments as follows: Plummer ($8,500), Armorer ($10,000). Moore ($17,500), Caesar ($17,500). In addition, Plummer is to be promoted to Senior Trust Officer/Assistant Vice President, Armorer to Supervising Auditor/Assistant Secretary, Moore to Senior Auditor, and Caesar to Senior Tax Specialist.
 
 
 7
 The district judge ordered that a hearing on the proposed decree be held and directed that a "Notice of Proposed Settlement" be sent by certified mail to all class members. He also directed that the notice be published in a newspaper of general circulation and that copies be posted on Bank bulletin boards. Although suit on behalf of the class was brought under Rule 23(b)(2), the notice to class members permitted them to opt out by filing a written request with "a brief statement of the reasons therefor."[2] Two hearings were held, at neither of which testimony was taken. By the time of the second hearing, twenty-five persons had indicated their opposition to the settlement and another twenty-five had opted out.[3]
 
 
 8
 On July 10, 1981, Judge Conner filed an opinion and order denying appellants' motion for approval of the settlement. Influenced in part by the Manual for Complex Litigation's admonishment against pre-certification settlement negotiations, Judge Conner felt that the procedure followed in the instant case required him to take special care to assure himself that the settlement was fair, reasonable, and adequate. He concluded that the record before him was inadequate to support a responsible finding that the settlement was fair, reasonable, and adequate or that the "grossly disparate benefits" awarded the named plaintiffs were justified.
 
 
 9
 Appellants urge that we either make a de novo examination of the record and reverse the decision below or remand for further proceedings. Because our review of the record satisfies us that Judge Conner's misgivings were warranted at least in part, we adopt the latter alternative.
 
 
 10
 Although tentative designations of class for settlement purposes are not uncommon, they have been the subject of considerable controversy. See In re Beef Industry Antitrust Litigation, 607 F.2d 167, 173-78 (5th Circuit 1979). Section 1.46 of the Manual for Complex Litigation suggests that ordinarily, before any settlement negotiations occur, there should be a class action determination and that, if settlement has been negotiated before class action determination and the appointment of a class representative, the court must be doubly careful in evaluating the fairness of the settlement. Readers of this opinion, who do not have ready access to the Manual, will find the reasons for its Board of Editors' recommendations set forth in the Appendix of In re Beef Industry Antitrust Litigation, supra, 607 F.2d at 183-84. The recommendations contained in the Manual were of sufficient merit to warrant the district judge's consideration. See McDonald v. Chicago Milwaukee Corp., 565 F.2d 416, 420 (7th Cir. 1977); Ace Heating & Plumbing Co. v. Crane Co., 453 F.2d 30, 33 (3d Cir. 1971).
 
 
 11
 Because of the limited control exercisable by class members, class settlements are susceptible to abuse. Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1169 (5th Cir.), cert. denied, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1978). "The interest of lawyer and class may diverge, as may the interests of different members of the class, and certain interests may be wrongfully compromised, betrayed, or 'sold out' without drawing the attention of the court." Id.; see In re Beef Industry Antitrust Litigation, supra, 607 F.2d at 174. This is more likely to occur in a situation such as we have here, where the plaintiffs have negotiated to the verge of settlement before suit is brought and have then sued under Rule 23(b)(2), which requires no pre-certification notice to class members.
 
 
 12
 In City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974), upon which appellants heavily rely, the settlement agreement was reached after more than three years of litigation, in which discovery had been virtually completed, all preliminary motions had been disposed of, and a motion for class certification was pending. Id. at 453. See also, In re Beef Industry Antitrust Litigation, supra, 607 F.2d 167, where "settlement was achieved only after several years of pending litigation", id. at 176, and Brucker v. Thyssen-Bornemisza Europe N. V., 424 F.Supp. 679, (S.D.N.Y.1976), aff'd sub nom., Brucker v. Indian Head, Inc., 559 F.2d 1202 (2d Cir.), cert. denied, 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977), where "the settlement was not negotiated in the early stages of the dispute, but rather after the parties had engaged in considerable litigation." 424 F.Supp. at 688. While the settlement negotiations in the instant case apparently proceeded on the basis of information voluntarily furnished by the Bank, some of this information was received by plaintiffs' attorneys pursuant to a stipulation of confidentiality. In each of the foregoing cases, the court also was careful to note the absence of any conflict between the proposed class and its unofficial representative. See City of Detroit, 495 F.2d at 465; In re Beef, 607 F.2d at 179; Brucker, 424 F.Supp. at 688-89.
 
 
 13
 Although negotiations in the instant case were conducted by undesignated class representatives without formal pretrial discovery, this, standing alone, did not preclude judicial approval. However, the district judge was bound to withhold such approval until he had closely and carefully scrutinized the joint settlement proposal to make sure that it was fair, adequate and reasonable, and not influenced in any way by fraud or collusion. Greenfield v. Villager Industries, Inc., 483 F.2d 824, 833 (3d Cir. 1973). The district judge also had to satisfy himself that the named plaintiffs were adequate representatives of the entire class in this across-the-board type of settlement. East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403-06, 97 S.Ct. 1891, 1896-98, 52 L.Ed.2d 453 (1977), and that plaintiffs had no interests which were antagonistic to those of other class members, Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968).
 
 
 14
 Indeed, if Judge Conner was not preliminarily satisfied that class members had been adequately represented in the settlement negotiations, he was empowered to explore that issue before submitting the proposed settlement to the class. See In re Traffic Executive Association-Eastern Railroads, 627 F.2d 631, 634 (2d Cir. 1980); Burwell v. Eastern Airlines, Inc., 68 F.R.D. 495, 499 (E.D.Va.1975). Although pre-certification notice is not required in Rule 23(b) (2) cases, Frost v. Weinberger, 515 F.2d 57, 65 (2d Cir. 1975), cert. denied, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976), a district court has the discretionary power under Rule 23(d) to require that class members be notified of an opportunity to "signify whether they consider the representation fair and adequate." Id. See Harriss v. Pan American World Airways, Inc., 74 F.R.D. 24, 44-45 (N.D.Cal.1977); Women's Committee for Equal Employment Opportunity v. National Broadcasting Co., 71 F.R.D. at 666, 671 (S.D.N.Y.1976).
 
 
 15
 Adequacy of representation and fairness of compromise are questions of fact for the district court. Johnson v. Georgia Highway Express Inc., 417 F.2d 1122, 1124 (5th Cir. 1969). Although we do not expect district judges to convert settlement hearings into trials on the merits, we do expect them to explore the facts sufficiently to make intelligent determinations concerning adequacy and fairness. In re Traffic Executive Association-Eastern Railroads, supra, 627 F.2d at 633. There must be some "evidentiary foundation" in support of the proposed settlement. Saylor v. Bastedo, 623 F.2d 230, 239 n.11 (2d Cir. 1980); see Mendoza v. United States, 623 F.2d 1338, 1348 (9th Cir. 1980), cert. denied, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981). Some Circuits have held that the district court must make findings of fact and conclusions whenever the propriety of a settlement is in dispute. Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977); Mandujano v. Basic Vegetable Products, Inc., 541 F.2d 832, 834-36 (9th Cir. 1976); see Patterson v. Newspaper and Mail Deliverers' Union, 384 F.Supp. 585, 588 (S.D.N.Y.1974), aff'd 514 F.2d 767 (2d Cir. 1975), cert. denied, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). If Title VII class settlements are to be treated henceforth as injunctions for purposes of appeal, see Carson v. American Brands, supra, 101 S.Ct. 993, it would seem that findings and conclusions should be made with respect to every controverted settlement in order to permit intelligent review. See United States v. Rohm & Haas Co., 500 F.2d 167, 177 (5th Cir. 1974), cert. denied, 420 U.S. 962, 95 S.Ct. 1352, 43 L.Ed.2d 439 (1975); Fed.R.Civ.P. 52(a). Moreover, those findings and conclusions should not be based simply on the arguments and recommendations of counsel. In re General Motors Corporation Engine Interchange Litigation, supra, 594 F.2d at 1125; Pettway v. American Cast Iron Pipe Co., supra, 576 F.2d at 1215-16; Saylor v. Lindsley, 456 F.2d 896, 900-01 (2d Cir. 1972).[4]
 
 
 16
 The factors which the district court should consider in assessing proposed settlements have been discussed in detail in numerous opinions. See, e.g., In re General Motors Corporation Engine Interchange Litigation, supra, 594 F.2d at 1123-33; City of Detroit v. Grinnell Corp., supra, 495 F.2d at 463. Judge Conner correctly recognized these factors as appropriate for consideration in class actions alleging discrimination. See, e.g., Armstrong v. Board of School Directors, supra, 616 F.2d at 314-15; Boyd v. Bechtel Corp., 485 F.Supp. 610, 617 (N.D.Cal.1979); Women's Committee for Equal Employment Opportunity v. National Broadcasting Co., supra, 76 F.R.D. at 175. When a district court approves a settlement which is not based upon "well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors", its decision will not survive appellate review. Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 434, 88 S.Ct. 1157, 1168, 20 L.Ed.2d 1 (1968); Newman v. Stein, 464 F.2d 689, 692 (2d Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972); see Ashbach v. Kirtley, 289 F.2d 159, 163-66 (8th Cir. 1961); Upson v. Otis, 155 F.2d 606, 612-15 (2d Cir. 1946).
 
 
 17
 The record supports Judge Conner's uncertainty concerning the fairness of the agreement and the adequacy of the class representation. Because there are only a limited number of supervisory positions in the Bank, all members of the proposed class, at least 500 of whom are current employees, could not be promoted. The possibility of an antagonism in interests as between plaintiffs and other class members seeking advancement could not be ignored. See Franks v. Kroger Co., 649 F.2d 1216, 1226 (6th Cir. 1981); Hill v. Western Electric Co., 596 F.2d 99, 101-02 (4th Cir.), cert. denied, 444 U.S. 929, 100 S.Ct. 271, 62 L.Ed.2d 186 (1979); Air Line Stewards and Stewardesses Ass'n v. American Airlines, Inc., 490 F.2d 636, 640-42 (7th Cir. 1973); Gray v. International Brotherhood of Electrical Workers, 73 F.R.D. 638, 642 (D.D.C.1977).
 
 
 18
 Appellees' objections to plaintiffs' preferential treatment are not satisfactorily answered with the argument that plaintiffs were the ones who filed charges with the Equal Employment Opportunity Commission and thereafter became the named party plaintiffs. At the time the EEOC charges were filed, plaintiffs' attorneys purported to be acting as representatives of the entire class. No showing has been made that the attorneys offered their services to all class members for the purpose of filing charges or that those members were advised of the preferential treatment which would be given those who filed. Indeed, the notice of settlement itself failed to inform class members that plaintiffs were being given preferred treatment. There is nothing in the record to show that plaintiffs were discriminated against in any greater or different manner than were other class members.
 
 
 19
 It may be, of course, that the named plaintiffs' claims are more meritorious than those of other class members. There is no proof in the record that the Bank ever discriminated against blacks as a class, and the Bank's willingness to pay damages to the named plaintiffs does not mean that it would agree to pay similar sums to other class members. It is quite possible that unnamed class members would get nothing if forced to litigate their claims. Bearing all these possibilities in mind, we believe, nonetheless, that the district court properly exercised its discretion in requiring additional evidentiary support for the more generous treatment accorded plaintiffs in the proposed decree. See, e.g., Women's Committee for Equal Employment Opportunity v. National Broadcasting Co., supra, 76 F.R.D. at 180-82.
 
 
 20
 In deciding whether to approve a proposed class settlement, the most significant factor for the district court is the strength of the claimants' case balanced against the settlement offer. In re Traffic Executive Association-Eastern Railroads, supra, 627 F.2d at 633. In view of the fact that all class members who do not opt out of the proposed settlement are forever barred from any claim for race discrimination on or before the date of the decree, the district judge ought to be able to make a finding as to what those members are giving up. See, e.g., Krasner v. Dreyfus Corp., 500 F.Supp. 36, 45 (S.D.N.Y.1980). We have no doubt that the proposed consent decree will give class members more than they are receiving under the affirmative action plan presently in effect. The decree's three-year affirmative action goal speeds up by several years the current goals. The Bank is committed to disbursing $400,000, and eligible class members will receive payments from this fund without the need to prove personal discrimination and damages. The appointment of an ombudsman is also a significant improvement over the current plan. However, the district court is required to weigh these advantages against the disadvantages, if any, that may result from the proposed decree. We agree with the district court that the facts were insufficiently developed to enable it intelligently to make such an appraisal.
 
 
 21
 In so holding, we do not mean to suggest that extensive pre-trial discovery is a prerequisite to approval or that obstructionist tactics by a minority of objecting class members should be permitted to turn a settlement hearing into a full blown trial on the merits. Having made this point, we see no need to direct the manner in which factual development should take place on remand.
 
 
 22
 The order appealed from is affirmed without prejudice and without costs, and the matter is remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 The district court judge should not take it upon himself to modify the terms of the proposed settlement decree, nor should he participate in any bargaining for better terms. In re General Motors Corporation Engine Interchange Litigation, 594 F.2d 1106, 1125 n.24 (7th Cir.), cert. denied, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979); Armstrong v. Board of School Directors, 471 F.Supp. 800, 804 (E.D.Wis.1979), aff'd, 616 F.2d 305 (7th Cir. 1980). However, a dissatisfied judge may, with circumspection, "edge" the parties in what he believes to be the right direction. Seigal v. Merrick, 590 F.2d 35, 39 (2d Cir. 1978)
 
 
 [2]
 The Circuits differ as to whether opting-out is permissible in Rule 23(b) (2) actions. See, e.g., Laskey v. International Union, United Automotive, Aerospace and Agricultural Implement Workers, 638 F.2d 954, 956 (6th Cir. 1981); Penson v. Terminal Transport Co., 634 F.2d 989, 992-96 (5th Cir. 1981); Bauman v. United States District Court, 557 F.2d 650, 659-60 (9th Cir. 1977); Grigsby v. North Mississippi Medical Center, Inc., supra, 586 F.2d 457, 461 (5th Cir. 1978). Although that issue in its present posture has not yet been before this Court, the tenor of the opinions in this Circuit has been that opting-out is permissible only in Rule 23(b)(3) cases. See Robertson v. National Basketball Ass'n., 556 F.2d 682, 684-86 (2d Cir. 1977); Cullen v. New York State Civil Service Commission, 435 F.Supp. 546, 561 (E.D.N.Y.1977), appeal dismissed, 566 F.2d 846 (2d Cir. 1977); Van Gemert v. Boeing Co., 259 F.Supp. 125, 130 (S.D.N.Y.1966). But see Women's Committee for Equal Employment Opportunity v. National Broadcasting Co., 71 F.R.D. 666, 671 (S.D.N.Y.1976)
 If proposed class members are to be permitted to opt out, we find nothing in Rule 23 which requires them to file written reasons for their exercise of choice. Any reasonable indication of a desire to opt out should suffice. In re Four Seasons Securities Laws Litigation, 493 F.2d 1288, 1291 (10th Cir. 1974); 7A Wright & Miller, Federal Practice and Procedure § 1787 (1972).
 
 
 [3]
 Eight of those who explained why they opted out said that they had not been discriminated against. One who sought exclusion wondered why plaintiffs were being paid a total of $55,000 when discrimination had neither been proved nor admitted, and asked "If four people by filing suit can obtain compensation ranging from $8,500 to $17,500 without proving discrimination, why aren't all members of the class being similarly compensated?" Another expressed a belief that many of the provisions of the decree "are already in place at Chemical Bank."
 
 
 [4]
 Nothing continued in Judge Conner's opinion or in this Court's opinion should be construed to impugn in any way the character or competence of counsel for either the plaintiffs or the defendant. Simply put, a court may not delegate to counsel the performance of its duty to protect the interests of absent class members