Roderick PLUMMER, Raymond W. Armorer, Neville F. Caesar, Gwendolyn Moore, and all other similarly situated, Plaintiffs,

v.

CHEMICAL BANK, Defendant.

No. 80 Civ. 7364 (WCC).

United States District Court, S.D. New York.

March 22, 1983.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for plaintiffs Roderick Plummer and Gwendolyn Moore; Judith P. Vladeck, Joseph J. Garcia, New York City, of counsel.

Irwin Klein, New York City, for plaintiffs Raymond W. Armorer and Neville F. Caesar; Alan R. Aledort, Jericho, N.Y., of counsel.

Epstein, Becker, Borsody & Green, P.C., New York City, for defendant; Ronald M. Green, Susan Schenkel-Savitt, New York City, of counsel.

Silverman & Harnes, New York City, for objectors Herman I. Taitt and Lewis Straker; Sidney B. Silverman, New York City, of counsel.

OPINION AND ORDER

CONNER, District Judge:

This is a purported class action on behalf of Black officials, managers, and professionals employed by defendant Chemical Bank ("Chemical") in New York City,

brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981. Plaintiff Roderick Plummer ("Plummer") seeks Court approval, pursuant to Rule 23(e), F.R.Civ.P., of a consent decree entered into on December 13, 1982 (the "Consent Decree") between his attorney Judith Vladeck ("Vladeck"), assertedly on behalf of the purported class, and Chemical. Contemporaneously with that approval, Plummer requests that the Court certify the class described in the Consent Decree. See Rule 23(c)(1), F.R. Civ.P. While defendant Chemical supports Plummer's motion, the other named plaintiffs, Raymond W. Armorer ("Armorer") and Neville F. Caesar ("Caesar"),[1] and a number of non-party class members oppose it.

In an Opinion and Order dated July 10, 1981,[2] familiarity with which is presumed, this Court refused to approve an earlier consent decree (the "Prior Decree") proposed by the parties.[3] That decision was affirmed by the Court of Appeals for the Second Circuit, *Plummer v. Chemical Bank,* 668 F.2d 654 (2d Cir.1982), without prejudice to a renewed application in this Court after the parties supplemented the record and cured the defects that existed in the Prior Decree. Although the instant motion is accompanied by a far more extensive evidentiary record than existed previously, the Consent Decree contains many of the same failings that were inherent in the Prior Decree. Moreover, at the current time there is absolutely no support among the purported plaintiff class for the Consent Decree proffered to the Court, except for Vladeck's efforts on behalf of her sole remaining class client, Plummer. Because these problems continue to raise doubts concerning the fairness of the proposed settlement, the motions for approval and certification are denied.

*Discussion*

 Adequacy of class representation and the fairness of a compromise are questions of fact for the Court. *Plummer, supra,* 668 F.2d at 659. As noted in my earlier Opinion in this matter, the Court's role in evaluating a proposed settlement is not to decide the merits of the controversy, but to determine whether the settlement is fair, reasonable and adequate from the perspective of absent class members. See 91 F.R.D. at 438. In making this determination,

> [t]he court should consider the complexity, expense and likely duration of the litigation, the reaction of the class to the settlement, the stage of the proceedings and the amount of discovery completed, the risks of establishing liability, the risks of establishing damages, the risks of maintaining the class action through the trial, the ability of the defendants to withstand a greater judgment, the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.*

The most important factor, however, is the strength of the plaintiffs' case balanced against the terms of the settlement offer. *Plummer, supra,* 668 F.2d at 660.

With the following changes, the Consent Decree is virtually identical to the Prior Decree, previously rejected by the Court:

> (1) Black employees who are no longer employed by the Bank are excluded from class membership.

---

1. The fourth named plaintiff, Gwendolyn Moore, has reached a separate settlement with Chemical. In a separate Order entered today, the Court has dismissed her claim against Chemical with prejudice, and has ordered that the complaint in this action be amended accordingly.

2. *Plummer v. Chemical Bank,* 91 F.R.D. 434 (S.D.N.Y.1981) (Conner, J.).

3. The Prior Decree, dated February 10, 1981, was also signed by Vladeck, who at that time represented all of the named plaintiffs in this action.

(2) The employment figures have been updated to current levels.

(3) An extra $100,000 has been added to the fund from which promotion payments are to be paid, bringing the total amount available to $400,000, no portion of which may revert to Chemical.

(4) The lump sum promotion payments have been increased from $1,500 to $2,500 for a Black employee who, when he is promoted has between 2 and 4 years of service exceeding the average; from $2,500 to $4,000 for a Black employee with between 4 and 5 years of excess service; from $3,500 to $6,500 for a Black employee with between 5 and 10 years of excess service; and from $4,500 to $10,000 for a Black employee with 10 or more years of excess service.

(5) The jurisdiction of the Ombudsman has been specifically defined, and Chemical is now required to give class counsel notice of the person it has appointed to that position prior to public announcement of the appointment.

(6) The position of Special Master has been created. This person, who will be court appointed, is given discretion to review "any final decision of the Bank which is presented to the Special Master for consideration by any member of the class in any matter where there has been a recommendation by the Ombudsman."

(7) The relief for the named plaintiffs has been changed somewhat. Plummer is still to receive the sum of $8,500, but is not guaranteed a promotion. He is, however, guaranteed enrollment in the Harvard Seminar Program if his work performance is satisfactory. Armorer is still to receive a payment of $10,000, and is guaranteed a promotion in November, 1983 contingent upon continued commendable performance.[4] His promotion level is not, however, set forth as it was in the Prior Decree. Caesar, who is no longer represented by Vladeck, does not receive any relief beyond that afforded to all class members.

(8) The attorney's fee for Vladeck's firm has been changed to a reasonable amount to be fixed by the Court rather than a specified sum.

(9) There is no requirement that the members of the class be notified of the Consent Decree.

Despite the improvement these changes bring to the Consent Decree, they do not obviate the concerns this Court expressed in its Opinion and Order of July 10, 1981.

■ The initial, and most glaring, problem concerns the relief for named class members. While the Consent Decree goes a long way toward narrowing the wide gulf that existed in the Prior Decree between the relief for named plaintiffs and unnamed class members, there is still substantial disparity. Under the terms of the Consent Decree, Plummer and Armorer are to receive immediate cash payments as well as guarantees concerning future benefits. Relief under the Consent Decree for other class members is, however, wholly contingent upon future promotion or success under the grievance procedures. The parties have offered the Court no persuasive basis for this disparate treatment. Vladeck's contentions that Plummer and Armorer are no longer receiving more than the amount that is contingently available to an individual class member and that the difference in the relief for them as opposed to other class members is *de minimis* do not answer the fundamental question of why the named class representatives should be treated any differently from the rest of the class. If the named plaintiffs seek to settle on terms more favorable than those available to the class as a whole, they should continue this action in their individual capacities, rather

---

**4.** At the time the Consent Decree was formulated, Armorer was represented by Vladeck. He is no longer represented by her firm, and, through his new counsel, has advised the Court that he requests no individual relief beyond that which is afforded to the class as a whole. He does, however, oppose the proposed Consent Decree.

than as class representatives, or demonstrate to the Court that they were discriminated against differently or more seriously than were other class members. See *Plummer, supra,* 668 F.2d at 660. On the current state of the record, however, I cannot approve any settlement that provides the named class representatives with more favorable treatment than is accorded the class as a whole.

In rejecting the Prior Decree, the Court expressed concern that there was not a sufficient evidentiary record upon which it could judge the strength of plaintiffs' case. On the basis of the additional evidence presented, it appears that plaintiffs have a very firm *prima facie* case. While the Court is aware that the uncertainties and delays attendant upon pursuing a case such as the instant one through a full trial on the merits often make settlement a desirable alternative, the Court has a duty to ensure that the claims of the class are not being sold out at an unreasonably low price. If a settlement is approved, the class will be giving up what appears to be a substantial cause of action.

The financial aspects of the Consent Decree do not differ significantly from those contained in the Prior Decree. Although Vladeck and Chemical take pains to show the Court that they have bargained for the addition of $100,000 to the promotion fund, that amount is, as the objectors aptly point out, not much more than the interest Chemical has been earning on the settlement funds since the time that it agreed to furnish them under the Prior Decree. Thus, it is illusory to state that Chemical has really "upped the ante" under the Consent Decree.

Additionally, although the Court enthusiastically supports the concept of a court-appointed special master to hear disputes arising under the Consent Decree, the overall grievance procedure as currently proposed presents an undue burden on a class member who believes he or she has been improperly denied a promotion. Prior to reaching the Special Master, the Consent Decree contemplates that an aggrieved class member will present his case first to his supervisor, next to a representative from INTERCOM, a group of Black Chemical employees, and finally to the Chemical Ombudsman. If the Ombudsman believes that the employee's charge has merit, then he must follow a detailed set of procedures for pursuing that charge through the Chemical hierarchy. However, the Ombudsman, as an employee of Chemical, can hardly be considered the best advocate of the class member's case. It is only after the Ombudsman rejects the class member's claim or Chemical rejects the claim following the Ombudsman's favorable recommendation that the employee has access to the independent Special Master.

As presently formulated, this tortuous procedure contains no limitation on the length of time an assertedly aggrieved class member must wait before he receives either recognition of the validity of his claim from Chemical or access to the Special Master for an independent decision on the matter.[5] Since there are more members of the purported class than can possibly be promoted and, accordingly, receive the benefit of promotion payments under the Consent Decree, it is likely that the meandering path through the grievance procedures will be well travelled. Thus, to be fair to the class members, the internal procedures should be greatly simplified, if not mostly eliminated. In addition, definite time constraints must be placed on Chemical's period of review.

Moreover, the currently unsettled posture of this action makes the Court quite reluctant either to certify a class or to approve a settlement at this juncture. There exist serious questions as to which of the named plaintiffs desire to proceed as class plain-

---

**5.** While the proposed procedure does suggest that the supervisor should make a decision within ten days, and INTERCOM should make a decision within ten days, there is no such limitation with respect to the Ombudsman's recommendation and Chemical's various decisions based upon that recommendation. See Consent Decree at 51–52.

tiffs, who represents them, and who, if anyone, is in favor of the proposed settlement. From whatever worthy and admirable objectives the action sprung, it has detoured into a morass of uncertainty and dissension, making effective litigation or settlement of this dispute difficult or even highly improbable.

A conference in this matter is scheduled for Friday, April 15, 1983 at 11:30 A.M. in Room 608, U.S. Courthouse. At that conference, the Court will discuss with the parties the problems that have bogged down this action. If this matter is to proceed as a class action, the Court plans to follow the procedures recommended by the *Manual for Complex Litigation* for the efficient management of class actions in order to ensure that the problems that have beset this action in the past will not occur in the future. To that end, the Court's first step will be to settle the matter of suitable class representatives and establish a procedure for resolving the question of class certification. See *Manual for Complex Litigation* § 1.40.

So Ordered.