897 So.2d 85 (2004)
The STATE of Louisiana, William Kimball, H.M. Kimball, Jr., and Elizabeth Kimball Lewis, Individually and as Representatives of a Class of Those Similarly Situated
v.
SPRINT COMMUNICATIONS COMPANY, L.P., et al.
The State of Louisiana and XCL, Ltd., et al., Individually and as Representatives of a Class of Those Similarly Situated
v.
Wiltel, Inc., et al.
Nos. 2003 CA 1264, 2003 CA 1265.
Court of Appeal of Louisiana, First Circuit.
October 29, 2004.
Order Granting Rehearing April 6, 2005.
*87 Edward J. Walters, Jr., Darrel J. Papillion, Baton Rouge, Kevin R. Duck, Lafayette, Counsel for 1st Appellants/Plaintiffs The Alexander Objectors.
Kenneth W. DeJean, Lafayette, Scott A. Powell, Don P. McKenna, Birmingham, AL, for 2nd Appellants/Plaintiffs The McCormick Objectors.
Michael R. Mangham, Dawn M. Fuqua, Donald J. Ethridge, Lafayette, Victor L. Marcello, Donald T. Carmouche, John H. Carmouche, Gonzales, Patrick W. Pendley, Allen J. Myles, Plaquemine, for Appellees/Plaintiffs William Kimball, H.M. Kimball, Jr., Elizabeth Kimball Lewis, Katherine McClelland Sibille, The Sibille Co., Inc., Individually and as Representatives of a Class of Those Similarly Situated.
*88 Henry D. Salassi, Jr., John F. Olinde, Douglas L. Grundmeyer, Charles P. Blanchard, Keith C. Armstrong, New Orleans, for Appellees/Defendants The Settling Class Defendants Sprint Communications Co., L.P., et al.
Allen D. Darden, Baton Rouge, for Appellees/Defendants MCI Worldcom Network Services, Inc., et al.
Kenneth Pitre, Eunice, for Appellees/Objectors The Lurnest Fruge Heirs.
F. Gerald Maples, Pass Christian, MS, Timothy W. Porter, Jackson, MS, for Appellees/Objectors Russell W. and Wendy Amato.
L. Paul Foreman, Lake Charles, for Appellees/Objectors The J.R. Franks Objectors.
Before: CARTER, C.J., PARRO, GUIDRY, PETTIGREW, and GAIDRY, JJ.
CARTER, C.J.
This is an appeal from a district court judgment approving a class action settlement over the objection of certain class members. For the reasons that follow, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
In October of 1994, plaintiffs, the State of Louisiana ("State")[1] and other landowners, filed two separate class action suits, which were thereafter consolidated, asserting the named defendants wrongfully installed fiber optic telecommunications cables on land that plaintiffs owned without prior permission, payment, or compensation for valid right-of-ways across the lands at issue. Most of these cable lines were installed within right-of-ways that were previously granted by landowners or their ancestors-in-title to various railroad companies for the passage of railroad tracks.[2]
With respect to these parcels, one or more of the defendants had purchased quitclaim deeds from the railroad companies to install the fiber optic cables in the railroad right-of-ways, without any attempt to negotiate contracts with the underlying landowners. Plaintiffs alleged that right-of-ways granted to railroad companies were restricted "for railroad purposes" only and that the railroad companies had no right to grant servitudes to defendants.
Because of the numerous potential plaintiffs allegedly damaged by the actions of the defendants and the common issues of law and fact, plaintiffs further alleged that a class action was appropriate and that the named representative plaintiffs were qualified to represent the class. Named as defendants were: Sprint Communications Company L.P., U.S. Telecom, Incorporated, UTELCOM, Inc., and UCOM, Inc. (hereinafter collectively referred to as "Sprint"); and, MCI WORLDCOM Network Services, Inc., MCI Telecommunications Corp., LDX Net, Inc., WilTel LDX Acquisitions Corporation, WTG-Central, Inc., WilTel, Inc., and WorldCom Network Services, Inc. (hereinafter collectively referred to as "MWNS").
Following prolonged litigation, which included extensive discovery, negotiations, and several mediation sessions, a proposed settlement agreement was reached between the defendants, the class representatives, and the attorneys for the class *89 representatives; other settlement class members objected to the proposed settlement. The district court conditionally approved the settlement agreement on September 19, 2001, and a revised settlement agreement on October 9, 2001. W. Miguel Swanwick and Rust Consulting, Inc. were confirmed on November 14, 2001, as Claims Administrators for the proposed settlement. Additionally, an addendum to the settlement agreement was approved by the district court on May 29, 2002, including in the scope of the settlement certain utility right-of-ways and specifying the total number of linear feet of telecommunications cable in Louisiana owned by Sprint as being 1,779,360 feet. Also, on May 29, 2002, the district court approved the form of notice and procedure for distribution of the notice to the potential settlement class members. Notice was thereafter published in newspapers across the state in June of 2002.
The district court held a hearing on September 27 and 30, 2002, to determine whether the proposed settlement was fair, reasonable, and adequate. Following the hearing, an order was rendered, and a judgment was signed on December 5, 2002, by the court, certifying the settlement class and approving the settlement agreement, insofar as it applied to Sprint only. Settlement class members objecting to the settlement have appealed this judgment, asserting that the settlement is unfair because it: (1) requires an arduous and expensive claims process that appears likely to deter claims; (2) authorizes an amount and payment of attorney fees inappropriate in relation to payments to the class; (3) imposes an unfair time schedule by which class members must make elections; (4) requires class members to sign a servitude and right-of-way agreement unfair in scope and timing; (5) releases defendant railroads without payment of any compensation to class members; (6) provides no right of appeal from the unilateral decision of the single claims administrator; (7) includes threats by defendants to sue class members who opt-out; (8) allows the MWNS defendants to escape liability without payment during the course of their bankruptcy proceedings; (9) gives the defendants a unilateral right to withdraw from the settlement at any time; and (10) provides inadequate compensation to the class.

DISCUSSION

Applicable Law
A compromise in a class action suit in Louisiana is governed by LSA-C.C.P. art. 594.[3] However, because Article 594 was *90 enacted by 1997 La. Acts, No. 839, § 1, which became effective on July 1, 1997, and Section 3 of the Act provides that the Act "shall be applicable only to actions filed on and after its effective date," Article 594 cannot be applied to this action, which was filed on October 24, 1994. Thus, we must apply the law in effect prior to the enactment of LSA-C.C.P. art. 594.
The class action is a nontraditional litigation procedure permitting a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are "similarly situated," provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class action. Ford v. Murphy Oil U.S.A., Inc., 96-2913 (La.9/9/97), 703 So.2d 542; White v. General Motors Corp., 97-1028 (La.App. 1 Cir. 6/29/98), 718 So.2d 480, writ not considered, 98-2522 (La.12/11/98), 729 So.2d 587, writ denied, 98-2502 (La.12/11/98), 729 So.2d 590, writ denied, 98-2511 (La.12/11/98), 729 So.2d 591.
The trial court is afforded great discretion in class action certification. Wide latitude must be given the trial court in considerations involving policy matters and requiring an analysis of the facts under guidelines helpful to a determination of the appropriateness of a class action. In other words, the trial court has great discretion in deciding whether a suit should be certified as a class action. Unless the trial court has committed manifest error in its factual findings, or has abused its discretion in deciding that class certification is appropriate, the trial court's determination should be affirmed. White v. General Motors Corp., 718 So.2d at 488; Lewis v. Texaco Exploration and Production Co., 96-1458, p. 14 (La.App. 1 Cir. 7/30/97), 698 So.2d 1001, 1012.
Since the class action under consideration in White v. General Motors Corp. was filed prior to the 1997 revision of Louisiana Code of Civil Procedure class action articles, it was necessary for the court to examine the proposed settlement in light of prior law regarding creation of a "settlement class" certified for the sole purpose of effecting a settlement prior to trial of a class action. After reviewing the history of the class action in Louisiana and with respect to federal law, the White v. General Motors Corp. court concluded that creation of a settlement class was authorized under the law, but that trial court *91 review and approval of a settlement must nevertheless encompass virtually the same level of scrutiny applied for certification of a litigation class. In White v. General Motors Corp., it was noted that although the district court had made findings of numerosity, adequacy of representation, and common character of the right asserted, the lower court erroneously failed to consider other important factors relevant to approval of a formal class certification, and for that reason the settlement class certification was reversed. White v. General Motors Corp., 718 So.2d at 490-91. See also In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 800 (3 Cir.1995), cert. denied sub nom., General Motors Corp. v. French, 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995), holding that settlement class certification must meet essentially the same requirements as litigation class certification, and a court's failure to conduct such a review is a plain error of law, and hence an abuse of discretion, requiring that certification be set aside.
We are cognizant that the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. The parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial. These economic gains multiply when settlement also avoids the costs of litigating class status  often a complex litigation within itself. Furthermore, a settlement may represent the best method of distributing damage awards to injured plaintiffs, especially where litigation would delay and consume the available resources and where piecemeal settlement could result. See In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d at 784. However, a court cannot prematurely approve a settlement that does not meet the requirements imposed for the protection of class members.

Ruling of the District Court
Following the September 2002 fairness hearing, the district court in the instant case ruled that certification of the settlement class was appropriate and that defendants had properly complied with all notice requirements. Further, the district court issued detailed findings of fact and conclusions of law, which formed the basis for the court's rejection of the objections to the proposed settlement presented by the appellant settlement class members.
In so ruling, the trial court specifically restricted the application of the judgment approving the proposed settlement to the Sprint defendants. The court stated in its judgment the following:
WORLDCOM, Inc., for itself and various subsidiaries, including MCI WORLDCOM Network Services, Inc. filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on or about July 21, 2002....[D]ue to MWNS's bankruptcy filing, the Action is stayed as to MCI WORLDCOM Network Services, Inc., MCI Telecommunications Corp., LDX Net, Inc. WilTel LDX Acquisition Corporation, WTG-Central, Inc., WilTel, Inc., and WorldCom Network Services, Inc....[T]he Court will not address final approval of the Settlement Agreement as it affects MCI WORLDCOM Network Services, Inc., MCI Telecommunications Corp., LDX Net, Inc., WilTel LDX Acquisition Corporation, WTG-Central, Inc., WilTel, Inc. and Worldcom Network Services, Inc. due to the stay caused by WORLDCOM, Inc.'s bankruptcy filing[.]
Consequently, the trial court approved only a portion of the proposed settlement *92 agreement, i.e., insofar as it applied to the Sprint defendants. After a thorough review of the record presented in this case and applicable law, we are unable to affirm the ruling of the trial court in view of what we perceive as an abuse of discretion by the trial court in partially approving a proposed class action settlement.

Courts Cannot Modify a Proposed Class Action Settlement
The options available to a trial court when presented with a pre-trial class action settlement are to either approve the proposed settlement or reject the proposal; a trial court cannot impose a modified settlement agreement on the parties. Evans v. Jeff D., 475 U.S. 717, 726-727, 106 S.Ct. 1531, 1537, 89 L.Ed.2d 747 (1986). See also Plummer v. Chemical Bank, 668 F.2d 654, 655 n. 1 (2 Cir.1982); Manchaca v. Chater, 927 F.Supp. 962, 966 (E.D.Tex.1996); Alliance to End Repression v. City of Chicago, 91 F.R.D. 182, 195 (N.D.Ill.1981); Armstrong v. Board of School Directors of City of Milwaukee, 471 F.Supp. 800, 804 (E.D.Wis.1979), affirmed, 616 F.2d 305 (7 Cir.1980).[4]
In the instant case, the proposed class action settlement agreement, as written, included as settling defendants both the Sprint and MWNS defendants. The contract agreed to by the parties, as evidenced by the signatures of the settlement class counsel in October of 2001 and the subsequent sworn assertions of class representatives, contemplated participation by both the Sprint and MWNS defendants. Nevertheless, the approval given by the trial court, in September of 2002, was only as to that portion of the proposed agreement affecting the Sprint defendants, and did not approve the entirety of the document.
Further, the written settlement document did not contain a severability provision, which would give effect to any one or more provisions should another portion of the agreement be declared invalid. In fact, the agreement specifically stated that: "This Agreement may not be modified or amended except in writing signed by all Parties." (Emphasis added.)[5]
The parties have recognized this provision and signed a subsequent addendum that provided for inclusion of certain utility right-of-ways into the agreement and further agreed as to the total linear feet of telecommunications cable affected by the settlement as to each of the settlement class defendants. No further addendum appears in the record that would accomplish the modification of the settlement agreement to apply only to Sprint and not to MWNS. Thus, the trial court's attempt to accomplish a modification of the agreement subsequent to the fairness hearing was invalid under the terms of the agreement and under the jurisprudence cited *93 hereinabove, and its approval must be reversed.[6]

Notice Given to Louisiana Residents
We further find that because the settlement agreement cannot be implemented due to the bankruptcy and unavailability of MWNS, the notice disseminated to Louisiana residents was insufficient to apprise potential settlement class members of a modified settlement involving only the Sprint defendants.
Notice required to be sent in a class action must provide the class members with information sufficient to consider the terms of the proposed settlement and determine whether there is a basis for challenging the proposed settlement. See In re Shell Oil Refinery, 155 F.R.D. 552, 558 (E.D.La.1993). Further, notice in a class action should: describe succinctly and simply the substance of the action and the positions of the parties; identify the opposing parties, class representatives, and counsel; indicate the relief sought; explain any special risks of class members, such as being bound by the judgment, while emphasizing that the court has not ruled on the merits of any claims or defenses; and, describe clearly the procedures and deadlines for opting out. Robert H. Klonoff and Edward K.M. Bilich, Class Actions and Other Multi-Party Litigation, p. 393 (West 2000), citing Manual for Complex Litigation (Third), § 30.21 (1995).
In the instant case, the following notice of settlement was published in papers around the state in June of 2002:
You may be a member of a Settlement Class if you currently own or owned at any time since January 1, 1985, land underlying or abutting certain railroad rights-of-way in the following parishes ... or if you currently own or owned at any time since January 1, 1985, land underlying or abutting certain highway rights-of-way in the following parishes ... or if you currently own or owned at any time since January 1, 1991, land underlying or abutting certain Entergy utility rights-of-way in the following parishes....
The Settlement Class involves lawsuits in the 18th Judicial District Court for the Parish of West Baton Rouge against [Sprint and MWNS]. The plaintiffs allege that the defendants did not have the right to install fiber optic cables and facilities ("Telecommunications Facilities") within the above-described rights-of-way without plaintiffs' consent. The court has made no ruling as to the merits of the plaintiffs' claims or the defendants' denials, defenses, or counterclaims.
The purpose of this Notice is to inform you that a settlement has been proposed and preliminarily approved by the Court, and to inform you that, if you meet the ownership requirements listed above, you may be a class member and may want to request a Class Action Settlement Notice. The proposed settlement is between the Settlement Class, and each of Sprint [and MWNS]. The obligations of Sprint and MWNS are divisible and several, based upon the proportionate length of right-of-way in Louisiana occupied by each of the defendant's fiber optic cables.
If the Court approves the proposed settlement, qualifying Class Members will receive cash payments based upon the number of linear feet of each defendant's fiber optic cable on or adjoining *94 the Class Member's property. There are two categories of cash benefits: (1) "Fully Qualifying Landowner Benefits;" and (2) "Partially Qualifying Landowner Benefits." If you qualify as a "Fully Qualifying Landowner," the parties estimate that you may be paid approximately $5.56 per linear foot of defendants' fiber optic cable on your property. If you qualify as a Partially Qualifying Landowner, your benefits shall be 50 cents per linear foot of cable, except that if more than one defendant has fiber optic cable located on or next to your property, you will receive an additional 25 cents per foot for each additional separate cable. For both Fully and Partially Qualifying claims, payments will be prorated based on the time period you owned the property and the percentage of your ownership interest. If you wish to apply for benefits, you must submit a Claim Form and all documents as identified in the Claim Form necessary to establish your right to benefits. The deadline to submit complete Claim Forms for Partially Qualifying Landowner Benefits is November 18, 2002, and for Fully Qualifying Landowner Benefits is December 16, 2002.
Settlement Class Members who make a claim and qualify for either Fully Qualifying Landowner Benefits or Partially Qualifying Landowner Benefits shall be required to execute an appropriate conveyance of a permanent servitude to the defendants and a release of all claims they have, had, or may have against the defendants and certain other parties arising out of or relating to the Telecommunications Facilities. Even if you do not make a claim you will be deemed to grant to the defendants the above-described servitude, and you will be barred from bringing claims related to the Telecommunications Facilities against the defendants and certain other parties, unless you exclude yourself from the Settlement Class as set forth below.
You have a right to exclude yourself from the Settlement Class. If you wish to be excluded you must complete a "Class Action Exclusion Form" by August 16, 2002. If you timely submit the Class Action Exclusion Form you will NOT be eligible to receive any benefits under the Settlement Agreement.
The 18th Judicial District Court in West Baton Rouge Parish, Port Allen, Louisiana (the "Court") will hold a hearing on September 27, 2002, to determine whether the proposed settlement is fair, reasonable and adequate. If you do not request exclusion from the Settlement Class, you may object to the terms of the settlement; objections must be postmarked by August 16, 2002. Settlement Class Members who do not timely object waive all objections and shall not be heard or have the right to appeal approval of the settlement.
For more information, you may obtain a copy of the Class Action Settlement Notice by calling 1-888-277-8969, going to www.louisianafiberoptic settlement.com, or writing to Administrator for Louisiana Fiber Optic Cable Settlement, PO Box 1631, Fairbault, MN XXXXX-XXXX. You may also obtain a Claim Form or a Class Action Exclusion Form by calling 1-888-277-8969. The complete Settlement Agreement and case file may be reviewed at the 18th Judicial District Court, Courthouse, 850 8th Street, Port Allen, Louisiana. PLEASE DO NOT CONTACT THE JUDGE OR THE JUDGE'S CHAMBERS.
Further, on or about the same time, notice was mailed by the settlement class defendants to some 9,000 potential settlement class members, whose names and *95 addresses had been previously identified as possible claimants. The content of the mailed notice was substantially the same as the published one; however, the mailed notice contained some additional information. In particular, the mailed notice contained the following detailed summary of the possible benefit amounts available:
If you qualify as a "Fully Qualifying Landowner," and if all Settlement Class Defendants perform under the Settlement Agreement, your benefits are calculated as follows: The total settlement is $55,000,000.00. Settlement Class Counsel will apply for an award of attorney fees and expenses of $18,333,333.00 from the Court; any attorney fees and expenses that are awarded to Settlement Class Counsel by the Court will be deducted from the $55,000,000.00 settlement amount. The resulting amount is reduced by the "Settlement Administration Costs" necessary to administer the Settlement. Those costs depend on such things as how many Settlement Class Members make claims and how long it takes to evaluate the claims. The Settlement Administration Costs are estimated to be $2,000,000.00. The resulting amount is then divided by the total amount of linear feet of the Settlement Class Defendants' Telecommunications Cables within the Right-of-Way in Louisiana (6,229,101 feet). The resulting compensation per linear foot is then awarded to each Fully Qualifying Landowner based on the number of linear feet of each of the Settlement Class Defendant's (s') Telecommunications Cables located on that Settlement Class Member's property and the amount of time that the Settlement Class Member owned the property during the "Compensation Period" (in most instances January 1, 1985, or January 1, 1986, to the present).
Because the amount of Fully Qualifying Landowner Benefits cannot be determined until the Settlement Class Counsel's attorney fees and expenses are approved by the Court, and the Settlement Administration Costs have been determined, the precise amount of the Fully Qualifying Linear Foot Amount cannot yet be determined. But the following examples are illustrative of what a Settlement Class Member claimant who successfully makes a claim for Fully Qualifying Landowner Benefits could receive:
There is a total of 6,229,101 linear feet of the Settlement Class Defendants' Telecommunications Cables within the Right-of-Way in Louisiana. If (1) the Settlement Class Counsel attorney's fees and expenses are $18,333,333.00, (2) the Settlement Administrative Costs are $2,000,000.00, (3) the Telecommunications Cables extend for 1,000 linear feet on the claimant's property, and (4) the claimant was the only owner of the property during the entire Compensation Period, then the claimant's total recovery will be as follows: (($55,000,000  $18,333,333  $2,000,000) ÷ 6,229,101) × 1,000 = $5,565.28).
If the claimant owned the property during only one-half of the Compensation Period, then the claimant would be entitled to $5,565.28 × ½ = $2,782.64. If the claimant did not own the property by himself, but, for example, owned a 1/3 interest during the entire Compensation Period, with other family members owning the other 2/3rds, then the claimant would be entitled to $5,565.28 × 1/3 or $1,855.09.
....
Because the obligations of each Settlement Class Defendant are divisible and several, if one of the Settlement Class Defendants does not perform its obligations *96 under the Settlement, the others would continue to perform their divisible and several obligations. The extent of each Settlement Class Defendant's obligations is determined by the proportionate length of Right-of-Way in Louisiana occupied by each Settlement Class Defendant's Telecommunications Cables, which is 1,779,360 linear feet or approximately 28.565% of the total for Sprint, and 4,449,741 linear feet or approximately 71.435% of the total for MWNS. Each Settlement Class Defendant will be responsible for paying Fully Qualifying Landowner Benefits or Partially Qualifying Landowner Benefits only for the claims regarding Telecommunications Facilities that the Individual Settlement Class Defendant has owned or owns.
Although it seems that the bankruptcy proceeding involving the MWNS defendants was commenced after the publication of this notice, nevertheless, the MWNS bankruptcy rendered nugatory that portion of the notice indicating to potential settlement class members that MWNS would be participating and funding a portion of the proposed settlement. Even if potential class members had reviewed the actual proposed settlement agreement and other documents on file with the 18th Judicial District Court, the unavailability of MWNS as a participant in the proposed settlement would not have been revealed. The proposed settlement agreement on file in the district court suit record also stated that MWNS was a participant in the stated $55,000,000.00 total settlement fund, to be paid to claimants who qualified by the means stated therein. None of the proposed settlement agreement documents or notice documents divulged that the MWNS defendants were involved in a bankruptcy proceeding that would prevent payments to successful claimants by those defendants.
However, testimony at the September 2002 fairness hearing revealed that, despite the terms of the settlement agreement, only Sprint would be funding qualified claims as to its 1,779,360 feet of cable. This proportion of linear feet to the whole that was purportedly covered under the settlement agreement amounted to only 28.565 percent. Thus, potential settlement class members were informed by the notice received that $55,000,000.00 would be paid to satisfy their claims, attorney fees, and costs associated with the litigation and claims process, while in actuality only 28.565 percent, or some $15,710,750.00, was available to pay successful claims after fees and expenses were deducted.
Potential settlement class members were directed to execute appropriate forms for exclusion from the class, if desired, by August 16, 2002, some sixty days after notice of the proposed settlement was published, and prior to the court hearing during which it was divulged that MWNS would not be approved as participating in the settlement. Thus, the inaccuracies in the identification of settlement participants, settlement amount, and indication that successful claimants would be paid proportional "benefits" by Sprint and MWNS, which was contained in the notice of settlement, resulted in settlement class members being inadequately informed of the true nature of the settlement, prior to being required to decide whether to participate in the settlement.
Even though the public notice and other proposed settlement documents contained language to the effect that the obligations of Sprint and MWNS are "divisible and several obligations" and stated that each defendant was to pay only its proportional share of "benefits" owed, such language in no way apprised potential claimants that only Sprint's share would be available to satisfy claims, but rather was meant to *97 express that Sprint would pay its proportional share, and MWNS would pay its proportional share of the settlement fund.
We note that only the notice that was mailed to identified potential class members also contained language that the significant benefit amounts cited in the examples given therein would be paid "if all Settlement Class Defendants perform under the Settlement Agreement," and that "if one of the Settlement Class Defendants does not perform its obligations under the Settlement, the others would continue to perform their divisible and several obligations." However, this language was not included in the actual settlement agreement and for that reason alone was misleading. This language, contained in a notice to only a portion of potential claimants, was insufficient to inform all settlement class members that only Sprint would be paying benefits, particularly in light of the fact that such language was not included in the Settlement Agreement itself.
Under these circumstances, we conclude that the notice as distributed was insufficient in light of subsequent events and in light of the invalidity of the settlement agreement.[7] Because the settlement agreement by its terms required any modification to be contained in writing and signed by the parties, in order to effectuate a change in the proposed settlement to include only Sprint, a new writing should have been executed, and notice sufficient to apprise all potential settlement class members of the true nature of the settlement to be concluded, should have been given. Therefore, we conclude the trial court abused its discretion in approving the proposed settlement agreement.[8]
Having found the district court erred in approving this proposed class action settlement, on the bases stated, we find it unnecessary to address appellants' remaining assignments of error. Further, motions to this court for supplementation of the record and/or alternatively for remand to the district court for consideration of new evidence in support of objections to the settlement are rendered moot by the decision on the merits.

CONCLUSION
For the reasons assigned herein, the judgment of the district court approving the class action settlement is reversed, and the matter is remanded to the district court for further proceedings. Motions for supplementation of the record and/or alternatively for remand to the district court for consideration of new evidence are denied. All costs of this appeal are to be borne by defendants/appellees, Sprint Communications Company, L.P., et al.
*98 MOTIONS DENIED; JUDGMENT REVERSED; REMANDED.
GUIDRY, J., concurs in the result.
GAIDRY, J., dissents and assigns reasons.
PETTIGREW, J., dissents for the reasons assigned by Judge GAIDRY.
GAIDRY, J., dissenting.
The majority's reasoning is fundamentally flawed. Simply stated, the trial court did not abuse its discretion in approving the settlement negotiated and proposed by the parties after thorough mediation, and the notice was well-crafted, understandable, and more than adequate to provide reasonable notice to potential settlement class members.
More importantly, the majority uses a contorted interpretation of the term "modify" in suggesting that the trial court made an "attempt to accomplish a modification of the agreement." The trial court attempted no such thing. None of the cases cited by the majority address a situation similar to that which developed here: the subsequent bankruptcy of one or more of multiple party defendants, with separately-defined individual obligations regarding payment under the approved agreement. Rather, the thrust of those cases' relevant holdings is that a trial court may not impose its own additional terms on or changes to the parties' agreement, if such agreement is otherwise fair, adequate and reasonable. By eliminating reference to the bankruptcy petitioner defendants in its ruling following the fairness hearing, the trial court only complied with the automatic stay order issued in conjunction with the bankruptcy filing, as it was bound to do. Its action in that regard in no way worked a "modification" of the settlement, as that term was used in Evans v. Jeff D., 475 U.S. 717, 726-27, 106 S.Ct. 1531, 1537, 89 L.Ed.2d 747 (1986), and later cases. I respectfully dissent.

ON REHEARING
PER CURIAM.
We granted rehearing to allow the parties an opportunity to further address the adequacy of the notice given to potential settlement class members, particularly regarding information of MWNS's lack of participation in the settlement and the related informed choice of potential class members to participate in or opt out of the settlement.
After careful consideration, we adhere to the result reached in our original opinion for the reasons originally assigned. All costs of this application for rehearing are assessed against defendants/appellees, Sprint Communications Company, L.P., et al.
PETTIGREW and GAIDRY, JJ., dissent.
GUIDRY, J., concurs.
NOTES
[1] On July 4, 1999, the State filed a motion to dismiss its claims with prejudice, which was signed by the trial court; the remaining private landowners continued the action.
[2] Defendants asserted that the railroad companies obtained full ownership of the land on which railroad tracks were constructed, in most instances.
[3] LSA-C.C.P. art. 594 provides:

A. (1) An action previously certified as a class action shall not be dismissed or compromised without the approval of the court exercising jurisdiction over the action.
(2) Notice of the proposed dismissal of an action previously certified as a class action shall be provided to all members of the class, together with the terms of any proposed compromise that the named parties have entered into. Notice shall be given in such manner as the court directs.
B. After notice of the proposed compromise has been provided to the members of the class, the court shall order a hearing to determine whether the proposed compromise is fair, reasonable, and adequate for the class. At such hearing, all parties to the action, including members of the class, shall be permitted an opportunity to be heard.
C. The court shall retain the authority to review and approve any amount paid as attorney fees pursuant to the compromise of a class action, notwithstanding any agreement to the contrary. D. Any agreement entered by the parties to a class action that provides for the payment of attorney fees is subject to judicial approval.
E. If the terms of the proposed compromise provide for the adjudged creation of a settlement fund to be disbursed to and among members of the class in accordance with the terms thereof, the court having jurisdiction over the class action is empowered to approve the compromise settlement of the class action as a whole and issue a final judgment accordingly, following a finding that the compromise is fair, reasonable, and adequate for the class, and to order the distribution of the settlement fund accordingly, without the necessity of prior qualification of representatives of minors, interdicts, successions, or other incompetents or absentees, or prior approval of the terms of the settlement or the distribution thereof by another court; provided, that in such cases the court having jurisdiction over the class action shall include in the orders of settlement and distribution of the settlement fund appropriate provisions to ensure that all funds adjudicated to or for the benefit of such incompetents, successions, or absentees are placed in appropriate safekeeping pending the completion of appointment, qualification, and administrative procedures otherwise applicable in this Code to the interests and property of incompetents, successions, and absentees.
[4] A court only gives approval to those class action settlement agreements that it finds to be fair, adequate, and reasonable. It cannot modify the terms of a settlement; rather, it must approve or disapprove of a settlement as a whole. Manchaca v. Chater, 927 F.Supp. at 966.
[5] Also, in conjunction with the right to withdraw from the settlement agreement retained by the settlement class defendants, the agreement outlined the effect of withdrawal as follows:

In the event that Settlement Class Defendants were to withdraw from this Agreement, this Agreement and all orders and judgments issued to implement this Agreement shall have no further force and effect as to Settlement Class Defendants and the Released Parties, except that Settlement Class Defendants shall be entitled to a return of all monies they have deposited that have not already been disbursed for Notice and claims administration.
[6] We note that neither the parties to this lawsuit nor their attorneys signed the trial court order.
[7] Although we acknowledge that the notice appears to have been correct at the time that it was given, because the notice proved to be insufficient to inform settlement class members of the subsequent non-participation of MWNS, some of the settlement class members' consent to the proposed settlement could have been vitiated by error. See LSA-C.C. arts. 1948  1950.
[8] While appellants' assignments of error stated generally that the trial court erred in approving the proposed settlement agreement despite numerous aspects that were not shown to be fair, just, and reasonable, with a listing of some of those alleged defects, appellants' assignments of error did not specifically relate any of these defects to the improper modification of the settlement agreement by the trial court or notice given to settlement class members. Notwithstanding, this court has clear authority to render any judgment that is just, legal, and proper upon the record on appeal under LSA-C.C.P. arts. 2129 and 2164, together with Uniform Rules  Louisiana Courts of Appeal, Rule 1-3. See also Nicholas v. Allstate Ins. Co., 99-2522 (La.8/31/00), 765 So.2d 1017; Greenfield v. Lykes Bros. S.S. Co., XXXX-XXXX (La.App. 1 Cir. 5/9/03), 848 So.2d 30.