**Lawrence MANCHACA, et al., on behalf of themselves and all other persons similarly situated, Plaintiffs,**

**v.**

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**No. 9:90cv81.**

United States District Court,
E.D. Texas,
Lufkin Division.

May 6, 1996.

Shimon Kaplan, East Texas Legal Services, Beaumont, TX, Burton D. Fretz, National Senior Citizens Law Center, Washington, D.C., for plaintiffs.

Dane H. Smith, Assistant United States Attorney, Tyler, TX, Jack Sacchetti, General Counsel, Social Security Administration, Baltimore, MD, Doug Wilson, Social Security Administration, Baltimore, MD, for defendant.

## MEMORANDUM OPINION

HEARTFIELD, District Judge.

Plaintiffs [1] have alleged a failure by Social Security Administration (SSA) offices in Texas to fulfill certain duties imposed by the Food Stamp Act. The parties have reached a compromise and have submitted it to the court for approval. The court now approves this settlement.[2]

## BACKGROUND

1. "The Food Stamp program provides low-income households with assistance to obtain a more nutritious diet." Documentary App. in Supp. of Pls.' Mot. for Partial Summ. J. at 5 [hereinafter Doc.App.] (copy of GAO, *Social Security: Need for Better Coordination of Food Stamp Services for Social Security Clients*, Sept. 1992, at 3).[3]

2. The Food Stamp Act, 7 U.S.C. §§ 2011–32, establishes and describes the Food Stamp program. Two of its provisions affect SSA operations. First, 7 U.S.C. § 2020(i)(2) gives SSA offices the following directive:

[H]ouseholds in which all members are applicants for or recipients of supplemental security income shall be informed of the availability of benefits under the food stamp program and be assisted in making a simple application to participate in such program at the social security office and be certified for eligibility utilizing information contained in the files of the Social Security Administration.[4]

Second, 7 U.S.C. § 2020(j)(1) commands SSA offices to do the following:

Any individual who is an applicant for or recipient of social security benefits (under regulations prescribed by the Secretary [of Agriculture] in conjunction with the Secretary of Health and Human Services) shall be informed of the availability of benefits under the food stamp program and informed of the availability of a simple application to participate in such program at the social security office.[5]

3. Lawrence Manchaca, Joy Lindsey and Clarence Bailey filed suit for injunctive and declaratory relief against Louis W. Sullivan, Secretary of the United States Department of Health and Human Services, Gwendolyn S. King, Commissioner of SSA, and Noel Wall, Regional Commissioner of Social Security for the Dallas, Texas, Regional Office, on June 21, 1990.[6] Pls.' Original Compl. at 3–4.

4. Manchaca was receiving supplemental security income benefits. Pls.' First Am. Compl. at 7; *see also* Doc.App. at 64–65 (Second Supplemental Aff. of Lawrence Manchaca Submitted in Opp'n to Def.'s Mot. for Summ.J. paras. 1 & 3). Linsey and Bailey previously had received these benefits. Pls.' First Am.Compl. at 9–10; *see also* Doc.App. at 106 (Aff. of Joy Lindsey Submitted in Supp. of Pls.' Mot. for Class Certification para. 1); *id.* at 102 (Aff. of Clarence Bailey in Supp. of Class Certification para. 1). All three of these individuals were receiving so-

---

1. Although this litigation actually involves two subclasses of plaintiffs, *see infra* p. 964, the court refers to these groups collectively. It does so because membership in both subclasses is possible. *See, e.g., infra* notes 7 & 8.

2. The approved compromise appears as an appendix to this memorandum opinion.

3. The court will cite materials in this case's record by title. When appropriate, it also will report the date of filing.

4. "Title XVI [of the Social Security Act] ... provides [supplemental security income] benefits to financially needy individuals who are aged,

blind, or disabled regardless of their insured status." *Bowen v. Galbreath*, 485 U.S. 74, 75, 108 S.Ct. 892, 893, 99 L.Ed.2d 68, 71 (1988) (citing 42 U.S.C. § 1382(a)).

5. "Title II [of the Social Security Act] ... provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Id.* (citing 42 U.S.C. §§ 403 & 423). The court will refer to these benefits as social security benefits.

6. Shirley S. Chater subsequently became the only party defendant in this case. *See* Order, filed Apr. 19, 1996 (granting motion to substitute defendants).

cial security benefits. Pls.' First Am.Compl. at 7 & 9–10; *see also* Doc.App. at 106 (Aff. of Joy Lindsey Submitted in Supp. of Pls.' Mot. for Class Certification para. 1); *id.* at 102 (Aff. of Clarence Bailey in Supp. of Class Certification para. 1); *id.* at 64–65 (Second Supplemental Aff. of Lawrence Manchaca Submitted in Opp'n to Def.'s Mot. for Summ.J. paras. 1 & 3).

5. Manchaca claimed that he had been unable to apply for food stamps at the SSA office in Nacogdoches, Texas, Pls.' First Am. Compl. at 7–8; *see also* Doc.App. at 65–66 (Second Supplemental Aff. of Lawrence Manchaca Submitted in Opp'n to Defendant's Motion for Summ.J. paras. 4–5). Lindsey, as well as Bailey, alleged that he had been unable to apply for food stamps at the SSA office in Beaumont, Texas. Pls.' First Am. Compl. at 9–10; *see also* Doc.App. at 106 (Aff. of Joy Lindsey Submitted in Supp. of Pls.' Mot. for Class Certification para. 2); *id.* at 102 (Aff. of Clarence Bailey in Supp. of Class Certification para. 2).

6. Manchaca, Lindsey and Bailey maintained that their respective experiences reflected a widespread failure by SSA offices in Texas to meet their obligations under §§ 2020(i)(2) and 2020(j)(1). *See* Pls.' First Am.Compl. at 1–2 & 10–12. This belief led them to ask for certification of their suit as a class action. *See id.* at 13.

7. Geary Don Massengil, a recipient of both supplemental security income benefits and social security benefits who had been unable to apply for food stamps at the SSA office in Beaumont, Texas, *id.* at 10; *see also* Doc.App. at 59 (Aff. of Geary Don Massengil ¶¶ 3–4, 6 & 8–9), joined this action as a party plaintiff on November 28, 1990, Order, filed Nov. 28, 1991 (granting leave to add an additional party plaintiff).

8. On May 23, 1991, United States District Judge William Wayne Justice certified the following two plaintiff subclasses for this case: (a) "Persons who reside in the State of Texas and who are members of 'households in which all class members are applicants for or recipients of supplemental security income' " [7] and (b) "Persons who reside in the State of Texas and who are 'applicant[s] for or recipient[s] of social security benefits.' " [8] Order, filed May 23, 1993 (footnote omitted) (certifying a class action).

9. This case was transferred to Chief United States District Judge Robert M. Parker on May 19, 1992. United States District Court for the Eastern District of Texas, General Order No. 92–14.

10. On May 7, 1993, the parties commenced settlement negotiations. Pls.' Case Status Report, filed May 31, 1994, at 1. From the beginning, plaintiffs sought for the issue of attorneys' fees and costs to be severed from any compromise agreement. *See* Pls.' Ex. A (plaintiffs' settlement proposal).

11. On November 8, 1993, Chief Judge Parker dismissed this case. Order, filed Nov. 9, 1993. He vacated that ruling and reopened this case on November 18, 1993. Order, filed Nov. 18, 1993.

12. This case was reassigned to United States District Judge John Hannah, Jr., on March 24, 1994. *See* United States District Court for the Eastern District of Texas, General Order No. 94–12.

13. Judge Hannah transferred this case to the undersigned judge on April 28, 1995. Order, filed Apr. 28, 1995.

14. On June 9, 1995, the parties filed a notice in which they informed the court that they had reached a tentative settlement. Notice of Tentative Settlement at 1.

15. The parties submitted a settlement agreement to the court for approval on September 1, 1995. Settlement Agreement at 1 (file stamp).

16. On January 16, 1996, the court held a preliminary fairness hearing on this settlement agreement.[9] During this proceeding,

---

**7.** Manchaca and Massengil represent this plaintiff subclass. *See* Order, filed May 23, 1991 (certifying a class action).

**8.** Manchaca, Lindsey, Bailey and Massengil all represent this plaintiff subclass. *See id.* (certifying a class action).

**9.** The parties filed briefs outlining their respective views on the settlement agreement prior to the preliminary fairness hearing.

the parties provided a history of this case, discussed the nature of their compromise and presented a proposed notice of settlement to plaintiff class members.

17. Following the preliminary fairness hearing, the court granted the parties' joint motion for tentative approval of settlement agreement, for approval of notice to the class and for scheduling order. Order, filed Jan. 17, 1996. In doing so, it directed the SSA to provide copies of the notice to plaintiffs by March 1, 1996, instructed plaintiffs' counsel to arrange for the notice's posting by March 15, 1996, set April 12, 1996, as the deadline for class members to file objections to the settlement agreement and scheduled a fairness hearing on the settlement agreement for April 19, 1996. *Id.*

18. The notice of settlement to plaintiff class members [10] assumed the form of a yellow poster. It included the following: (a) a description of the plaintiff class, (b) a summary of allegations, (c) a synopsis of the settlement agreement's terms, (d) the procedure for plaintiff class members to object to the settlement agreement, (e) the date, time and location of the fairness hearing and (f) discussion of where plaintiff class members could review a copy of the settlement agreement and how they could obtain additional information about it. Pls.' Report to the Ct. on the Giving of Notice of the Proposed Settlement to the Class Ex. A (copy of notice).

19. In late January, 1996, the SSA sent a copy the notice to each of its Texas offices. Defs.' Report to the Ct. on Providing to the Class Notice of the Proposed Settlement (Decl. of Jack Gallagher ¶ 2(b)). Instruction to display the notice for a certain period of time accompanied each notice sent. *Id.* (Decl. of Jack Gallagher ¶ 2(b)).

20. Between February 28 and March 5, 1996, East Texas Legal Services (ETLS), which represents plaintiffs, mailed the notice to 1352 individuals and organizations in Texas.[11] Pls.' Report to the Ct. on the Giving of Notice of the Proposed Settlement to the Class (Aff. of Joan Straub ¶¶ 18–19). A cover letter accompanied each notice sent. *Id.* (Aff. of Joan Straub ¶ 18). It included the following: (a) a description of this case, (b) a report of the parties' arrival at a settlement and the court's preliminary approval of that compromise, (c) direction on where to post the notice and (d) encouragement to apprise others of this case and developments related to it. *Id.* Ex. C (copies of cover letters).

21. ETLS subsequently honored requests for 146 additional notices. Pls.' Second Report to the Ct. on the Giving of Notice of the Proposed Settlement to the Class (Aff. of Joan Straub ¶ 5).

22. Forty-four notices were returned to ETLS. *Id.* (Aff. of Joan Straub ¶ 6). Forty-three of these returns were initiated by the United States Postal Service. *See id.* (Aff. of Joan Straub ¶ 6). One came from a recipient whose clientele possesses no interest in this suit. *Id.* (Aff. of Joan Straub ¶ 6).

23. No written objections to the settlement agreement were filed.

24. On April 19, 1996, the court convened a fairness hearing on the settlement agreement. At the start of this proceeding, it admitted one document proffered by plaintiffs in support of the settlement agreement and granted plaintiffs' motion to take judicial notice of all matters in this case's record, *see* Fed.R.Evid. 201; *In re N.M. Natural Gas Antitrust Litig.,* 607 F.Supp. 1491, 1500 (D.Colo.1984).

25. During the fairness hearing, the parties described the settlement agreement's terms and presented arguments supporting its approval.

26. Nobody appeared at the fairness hearing to object to the settlement agreement.

---

**10.** The notice failed to mention that the case involved two plaintiff subclasses. Parties' Joint Mot. for Tentative Approval of Settlement Agreement, for Approval of Notice to the Class and for Scheduling Order Ex. B. It, instead, simply referred a single plaintiff class *Id.* This circumstance was unproblematic because the notice's description of the single plaintiff class encompassed all persons falling within either plaintiff subclass. *See id.*

**11.** The National Senior Citizens Law Center, which also represents plaintiffs, voluntarily included the notice in its newsletter.

## DISCUSSION

27. The court possesses jurisdiction over this case. *See* 28 U.S.C. § 1331.

28. Federal Rule of Civil Procedure 23(e) "provides in part that 'class actions shall not be dismissed or compromised without the approval of the Court.'" *Williams v. New Orleans Pub. Serv., Inc.*, No. 75–1635, 1988 WL 125448, at *2 (E.D.La. Nov. 23, 1988).

29. A court only gives approval to those class action settlement agreements that it finds to be "fair, adequate, and reasonable." *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. Unit A), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982). It "cannot modify the terms of [a] ... settlement; rather, ... [it] must approve or disapprove of [a] ... settlement 'as a whole.'" *Ahearn v. Fibreboard Corp.,* 162 F.R.D. 505, 527 (E.D.Tex.1995).

30. Judicial review of a class action settlement agreement focuses on the following issues:

(1) [T]he existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir.1983).

31. After considering these six factors, the court concludes that it should approve the settlement agreement that the parties have reached in this case.

32. First, nothing indicates that fraud or collusion underlies the compromise. The decision by plaintiffs to pursue attorneys' fees and costs subsequent to judicial approval of a settlement agreement demonstrates their commitment to arms-length negotiations. *Compare* Pls.' Ex. A (plaintiffs' settlement proposal) ("The issues of attorney fees and costs are severed from this settlement, and will be dealt with separately.") *with* Settlement Agreement at 12 ("The issues of attorney fees and costs are severed from this agreement, and will be dealt with separate-ly."). *See generally Manual for Complex Litigation, Third* § 30.42 (1995) ("Separate negotiation of the class settlement before an agreement on fees is generally preferable to avoid conflicts of interest between the attorneys and their clients, the class." (parenthetical reference omitted)).

33. Second, this litigation is complex, expensive and likely to continue for a substantial period in the absence of a compromise.

34. This case implicates complex fact issues. For example, it involves exploration of the SSA's intricate procedure for determining the distribution of work activities in SSA offices. *See generally* Dep. Excerpts in Support of Pls.' Mot. for Partial Summ.J. at 16 [hereinafter Dep.Exc.] (Dep. of David L. Bennett at 37–38); *id.* at 426–31 (Dep. of Olivia Tartar at 4–6 & 16–18); Doc.App. at 139–148 (copy of Sandra L. McCune, *A Report of the Food Stamp Joint Processing Activity of the Social Security Administration in FY 1990 and FY 1991,* Feb. 2, 1993 (analyzing data generated by this procedure)).

35. That plaintiffs have needed to depose twenty-eight individuals exemplifies this litigation's significant expense. *See* Dep.Exc.; Mot. to Reopen Case (Aff. of Shimon Kaplan ¶ 3); *see also* Pls.' Brief in Supp. of Their Mot. for Partial Summ.J.App. A (providing background information on each deponent). *See generally* Joint Mot. to Extend Disc. Deadline, filed Jan. 23, 1992, at 3 ("There is no one person within the [SSA] who knows all of the aspects of the issues involved in this litigation, nor anyone employed who possesses all of the documents relevant to all aspects of this litigation.").

36. This case's trial most likely would consume a considerable amount of time because of the complexity of the factual issues requiring resolution. Moreover, even if plaintiffs succeeded on their pending motion for partial summary judgment, which would foreclose the need for a trial, substantial time probably would be spent subsequent to that outcome on the development of a compliance plan acceptable to the court. *Compare* Pls.' Case Status Report, filed May 31, 1994, at 1 (stating that the parties' began settlement discussions on May 7, 1993) *with* Notice of Tentative Settlement at 1 (filed June 9, 1995).

37. Third, little, if any, discovery remains to be done.[12] This situation establishes that the parties have arrived at a compromise with a full understanding of the legal and factual issues surrounding this case.

38. Fourth, plaintiffs' likelihood of success on the merits is decent.

39. Fifth, the settlement agreement falls within the range of potential recovery. It institutes many of the changes in SSA practices that plaintiffs sought to effect through this litigation.

40. Finally, neither class counsel, class representatives nor absent class members oppose the settlement agreement. Current and former counsel for plaintiffs[13] believe that the compromise will insure that SSA offices in Texas meet their obligations under §§ 2020(i)(2) and 2020(j)(1). No plaintiff, moreover, objects to the settlement agreement, even though widespread dissemination of the notice of settlement to plaintiff class has occurred. *Cf. Ahearn,* 162 F.R.D. at 528.

41. Based upon this analysis, the court finds the parties' settlement agreement to be fair, adequate and reasonable. It, therefore, approves this compromise.

42. The court orders plaintiffs to submit any motion for attorneys' fees no later than sixty days from the date of this memorandum opinion's entry.

## APPENDIX

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### LUFKIN DIVISION

Lawrence Manchaca, et al., Plaintiffs

v.

Shirley S. Chater, Commissioner of Social Security, et al., Defendants

Civil Action No. 9:90CV 81.

### SETTLEMENT AGREEMENT

The parties, acting through respective counsel, having arrived through negotiation at an amicable resolution of the above-captioned civil action, hereby agree to the settlement of this case on the following terms and conditions:

### I. PUBLIC INFORMATION MATERIALS

Social Security and Supplemental Security Income (SSI) applicants and recipients must be adequately informed of the assistance the Social Security Administration (SSA) provides with regard to food stamp applications.

### A. Posters

1. SSA will post the poster attached as Exhibit A, in a size no less than 17″ by 22″, in every waiting room or reception area of each Social Security field office, on a permanent basis.

### B. Leaflets: Food Stamp Facts

1. SSA will assure that adequate supplies of both the English and Spanish language versions of the one-page Leaflet entitled Food Stamp Facts, attached as Exhibit B, are available in the waiting rooms or reception areas of all Social Security field offices, in a well marked location. SSA will instruct its field offices that the Leaflets always should be available.

2. Exhibit C will be printed on the reverse of each leaflet, in the appropriate language.

3. SSA will provide copies of the Leaflets to any State food stamp Agency which requests copies from SSA for the State's use in administration of the food stamp program.

### C. Pamphlets: "Food Stamps and Other Nutrition Programs" SSA will make the following changes to the Pamphlet:

1. Exhibit C will be printed on the last page of the Pamphlet.

---

**12.** Although plaintiffs have reported that their discovery is complete, defendants have made no such unequivocal disclosure. *Cf.* Minute Entry, filed Apr. 24, 1995, at 2 ("If no agreement is reached by 5/26[/95], then the dfts have until 9/22/95 to file a response to pla motion for summary jgm.").

**13.** Brenda Willett, former counsel for plaintiffs, voluntarily appeared at the fairness hearing to offer her assessment of the settlement agreement. *See generally* Order Substituting New Lead Counsel for Pl. Class, filed Mar. 31, 1993.

2. The statement on page 4 of the Pamphlet—"the Social Security Administration can take your application"—will be replaced by the statement from the Poster—"The Social Security office will help you fill out the Food Stamp application and will send it to the Food Stamp Office" in bold letters.

## II. TITLE II APPLICANTS AND RECIPIENTS

SSA agrees to take the following actions:

1. SSA field offices in Texas will continue to carry out the specialized procedures set out in GN R00203.002 of the Program Operations Manual System (POMS).

2. SSA will make the current State food stamp application form (or any other application which may be approved by the Food and Consumer Services (FCS) of the Department of Agriculture and the State for such use in the future) available at all its field offices, in well marked locations. SSA will assure that adequate supplies of the appropriate application are available at the field offices. SSA will instruct its field offices that the food stamp application forms always should be available.

3. SSA will include the information from the Title II portion of the Poster in the Title II brochure "Benefits Rights and Responsibilities."

4. SSA will include the information from the Title II portion of the Poster in the Title II Modernized Claims System (MCS) application receipt.

## III. SSI APPLICANTS RESIDING IN PURE SSI HOUSEHOLDS

The food stamp application, verification and certification process for eligible SSI applicants should implement the Congressional mandate of one-stop shopping and reflect the presumption that a food stamp application is to be taken from every SSI applicant who is eligible to apply for food stamps and does not refuse to file at the SSA office.

1. SSA field offices in Texas will continue to carry out the specialized procedures set out in GN R00203.002 of the POMS.

A. Modernized Supplemental Security Income Claims System (MSSICS)

1. SSA agrees to change the order and language of the food stamp questions on the MSSICS screens as follows:

a) The SSA representative will ask whether all household members [are] applying [for] or receiving SSI—the "pure household" question—prior to asking whether the individual wants to file a food stamp application with SSA.

b) Instead of asking whether the claimant "wish[es] to apply at this office," the question regarding whether the claimant wants to file a food stamp application with SSA will be phrased as "May I take your food stamp application today?"

c) The first MSSICS screen (Facsimile 1) will remain as follows:

Food Stamp Status:

(Choose One)
1 = CURRENTLY RECEIVING FOOD STAMPS
2 = FILED WITHIN THE PAST 60 DAYS
3 = NEVER FILED OR FILE DATE MORE THAN 60 DAYS IN THE PAST

Depending on the entry on Facsimile 1, MSSICS generates different succeeding food stamp screens. This agreement will result in the following changes to those screens on MSSICS:

(i) Facsimile 2 is generated when an individual is currently receiving food stamps. The first question, "RECERTIFICATION NOTICE RECEIVED WITHIN PAST 30 DAYS (Y/N)" will remain; if yes, the second question will be the "pure household" question; if yes, the third question will be "May I take ...", the current fourth question will be eliminated, and the last line will be "If no, explain...."

(ii) Facsimile 3 is generated when an individual has filed for food stamps within the past 60 days and is not currently receiving food stamps. SSA will amend Facsimile 3 in one of two ways.

(a) Option One: The first question, "FOOD STAMPS DECISION RECEIVED

(Y/N)" will remain; the second question will be amended to "IF YES, DECISION UN-FAVORABLE (Y/N)", if yes, the third question will be the "pure household" question; if yes or prerelease, the fourth question will be "May I take . . ."; the current fourth question will be eliminated, and the last line will be "If no, explain. . . ."

(b) Option Two: The first question, FOOD STAMPS DECISION RECEIVED (Y/N)" will remain, if yes, the second question will be the "pure household" question, if yes or prerelease, the third question will be "May I take . . ."; the current fourth question will be eliminated, and the last line will be "If no, explain. . . ."

(iii) Facsimile 4 is generated if the individual has never filed for food stamps, or has filed for food stamps more than 60 days ago (and is not currently receiving food stamps). The first question will be the "pure household" question; the second question will be "If yes, May I take . . ."; the third question will be eliminated, and the last line will be "If no, explain. . . ."

2. a) If a claimant who resides in a pure SSI household states that he will not be applying for food stamps at the SSA office, or that he does not wish to apply for food stamps, the SSA representative will ask for the reason. If the explanation given by the claimant is based on an error of fact, the SSA representative will, to the extent possible, provide correct information responsive to the factual error, for example, that the claimant will not be required to go to the food stamp office to apply or reapply for food stamps, the average amount of food stamp allotments, or (in certain states) the availability of Food Stamp assistance by means of delivery other than coupons.

b) The POMS will set forth standard answers to some of the typical reasons and questions, as to be agreed by the parties.

3. a) If the claimant still refuses to apply for food stamps at the SSA field office, the SSA representative will record the reason for the refusal on the appropriate MSSICS screen.

b) The POMS instructions regarding that part of the MSSICS will set forth standard language to be used when the refusal of the claimant is based on typical reasons. In all other cases, the reasons as given by the claimant will be input in the computer.

4. The MSSICS program will be set up such that the SSA representative must either record a "yes" answer to the question "May I take your food stamp application today" or a "no" answer and a reason for the refusal of the claimant to file for food stamps at the SSA field office.

B. Non–MSSICS Initial Applications And Redeterminations

1. The POMS related to the processing of non-MSSICS initial applications and redeterminations will be revised to reflect the presumption and intent with regard to food stamp applications as reflected in the MSSICS procedure.

2. If, during the term of this agreement, SSA determines to revise either Form SSA–8000 or Form SSA–8203 in a manner that will require destruction of current stocks after revision, SSA will recommend changes to the Office of Management and Budget (OMB) designed to revise the form to reflect the procedures regarding MSSICS agreed to herein. No changes to those forms are anticipated prior to their next scheduled review by OMB in accordance with the Paperwork Reduction Act. Form SSA–8000 is scheduled for OMB review in 1996. Form SSA–8203 is scheduled for OMB review in 1997.

a) If, in the course of these scheduled reviews, SSA determines to revise Form SSA–8000 or SSA–8203 in a manner which will not permit use of current stocks after revision, SSA will so advise the plaintiffs, solicit their comments as to appropriate changes, and include changes pertinent to this agreement among the revisions to be evaluated by OMB pursuant to the scheduled review.

b) If the preceding subparagraph is inapplicable, but SSA during the term of this agreement determines to revise either Form in a manner which will make current stocks unusable, SSA will so advise the plaintiffs, solicit their comments as to appropriate

changes, and include changes pertinent to this agreement among the revisions to be evaluated by OMB at that time.

C.  Application Forms for Food Stamps

1.  SSA may use whatever food stamp application form it chooses for taking applications from SSI applicants and recipients, subject to approval by FCS and the State food stamp agency.  The SSA representative will complete all questions on the food stamp application by first transferring information contained in the SSI application, the MSSICS and SSA files to the food stamp application; only if the information is not available in those sources will the applicant be requested to supply the necessary information.

D.  Requesting and Transmitting Evidence for Food Stamp Purposes (Applicable in Texas Only)

1.  a) SSA will request all individuals whose food stamp applications are taken by SSA to provide evidence to establish their food stamp eligibility ("food stamp evidence") and will advise the claimant of the nature of the evidence required.  This "food stamp evidence" would consist of written evidence of rent or mortgage payments, current utility bills—including telephone, evidence of gross income, evidence of resources, evidence of medical expenses, evidence of dependent care payments, evidence of student status, and evidence of alien status.

b) SSA is simply to transmit to the food stamp office whatever documentary evidence it receives from the claimant.  SSA is not required to assess the value or confirm the validity of the food stamp evidence, except as provided in the current POMS SI 01801.300(C), related to proofs necessary for SSI purposes.  SSA is not required to follow up on the request for evidence from the claimant, nor is SSA required to make sure the claimant actually sends in the evidence requested.

2.  a) Telephone applicants will be asked during the telephone conversation in which their applications are taken whether they wish to return their food stamp applications to SSA or the State food stamp office.  The SSA representative will not advise the tele-

phone applicant that the food stamp application will be processed faster if it is returned to the food stamp office unless: 1) the applicant appears to be eligible for expedited service;  or, 2) the applicant, unsolicited and on his own initiative, raises a question which reasonably requires that response.  Those claimants who choose to return their food stamp applications to SSA will be instructed to mail the food stamp evidence to SSA together with the signed applications (for SSI and food stamps) and any other forms or documentary evidence they are asked to send to SSA to complete the application process.

b) Applicants with appointments who apply for SSI and food stamps in person at the SSA office will be sent an appointment confirmation notice advising them to bring the food stamp evidence to the appointment. SSA's appointment confirmation notice will be modified for this purpose.  If the applicant does not bring the food stamp evidence to the appointment, the food stamp application will be processed as described in section D.2.c, below.

c) Applicants without appointments whose applications are taken in person at the SSA office will be asked to send the food stamp evidence to SSA only if they are currently required to provide the SSA office with any documentary evidence with respect to SSI. If documentary evidence is not currently required for SSI purposes, and such applicants have to provide only food stamp evidence, the claims representative will instruct the applicant to mail the evidence to the State food stamp office.  Texas residents will be provided a distinctive envelope to mail the food stamp evidence to the State food stamp office.

E.  Processing

1.  An applicant who resides in a pure SSI household will be advised that he does not have to go to the State food stamp office to apply or reapply for food stamps.

2.  The food stamp application will be mailed to the State food stamp office within one federal working day, with the Transmittal Form.  The Transmittal Form will include the applicant's Social Security number, as verified by SSA.

3. Applications for food stamps may be taken by telephone or mail.

F. Expedited Service

1. SSA will train its employees regarding expedited service for food stamps, and will ensure that its employees are familiar with the meaning of, and the requirements for, expedited service.

2. If an individual otherwise eligible to file for food stamps at the SSA office qualifies for expedited service, the SSA representative will advise the claimant that he might receive food stamps sooner if he applies at the State food stamp office, but that he can apply at the SSA office if he wishes.

3. SSA representatives will not advise a claimant who does not appear to qualify for expedited service that he can get food stamps sooner if he applies at the State food stamp office.

4. If an applicant for SSI who resides in a pure SSI household qualifies for expedited service with respect to food stamps and chooses to file at SSA, the SSA representative will take the application and process it in the usual manner, except that the Transmittal Form will be marked "expedited service" in red ink.

5. If the claimant chooses to apply at the State food stamp office, the SSA representative will complete the expedited service portion of the food stamp application (Part I) and give it, together with a Transmittal Form, to the claimant to take to the food stamp office.

IV. SSI RECIPIENTS

A. Redetermination of Continuing Eligibility for SSI

1. Whenever a field office of SSA conducts a determination of continuing eligibility for SSI ("redetermination") of a person who resides in a pure SSI household, and the person states that he is not receiving food stamps, and does not have a pending food stamp application, the SSA representative will complete a food stamp application and process it in the usual manner if the recipient does not refuse to file for food stamps at the SSA office.

2. Whenever SSA conducts a redetermination through a centralized nationwide mail system, the Redetermination Rider will be mailed out. The language in the Redetermination Rider will be revised to contain the language shown in Exhibit D or similar language to be agreed to by the parties.

3. The completion of a food stamp application as part of the redetermination may be by telephone and mail.

B. Recertification for Food Stamps

1. If a State food stamp office requires an SSI recipient who resides in a pure SSI household to be recertified as to eligibility for food stamps, the individual may file that application either at the state food stamp office or with SSA. If the SSI recipient contacts SSA regarding food stamp recertification, SSA will take the individual's food stamp application. The SSA representative will fill out a food stamp application for that person and process it in the usual manner.

2. Food stamp applications arising out of the food stamp recertification process at the SSA office may be taken by telephone and mail.

V. Studies and Access to Information

A. SSA will conduct two studies of Texas field offices' experience with the new procedures set forth herein to determine their effectiveness in promoting the goals of joint processing and the extent of the Agency's compliance with them. The first study will begin after the new procedures, exclusive of the changes in MSSICS, have been in effect for approximately one year. The second study will begin after the MSSICS changes have been in effect for approximately one year. It is anticipated that each study will take from nine months to one year to complete.

1. The studies will be conducted in accordance with scientifically acceptable methods. All source materials used in the studies will be made available to the plaintiffs (with personal identifiers deleted). SSA will provide plaintiffs with adequate explanation of the

source materials, the methodologies, the analyses and the conclusions of the studies.

2. Plaintiffs will be provided access to the information available from MSSICS for the period of time covered by the MSSICS study, including statistical data and the reasons given by claimants for refusing to file for food stamps with the SSA, by field office in Texas and by category. On request, SSA will provide plaintiffs with adequate explanations of that information. To the extent any such information is not available from MSSICS, SSA will provide plaintiffs with an adequate explanation for that unavailability.

## VI. ANTICIPATED TIMEFRAMES

The parties anticipate that all changes in MSSICS will be implemented in 1997. SSA will make its best efforts to complete implementation of the other changes contemplated by this agreement within twelve months of the Court's order effectuating the agreement. SSA will implement all such changes by the end of 1996. The parties anticipate that the required studies will be completed by the end of 1998.

## VII. MISCELLANEOUS

1. SSA will maintain a reliable source of food stamp applications.

2. SSA will provide a food stamp training program for its staff on the responsibilities of the SSA with regard to food stamps and under this agreement. This training will assure that all staff know that food stamp applications must be taken from SSI applicants and recipients who live in a pure SSI household and do not refuse to file for food stamps at the SSA office, that they understand that this is a routine procedure, and that they understand that this responsibility is taken seriously by the national office. In addition, SSA will train all appropriate staff as to the meaning of "categorical eligibility" and "expedited service."

3. POMS SI 01801.200.B.d. currently requires that claimants who file their food stamp applications by telephone be advised that they may receive their food stamps more quickly if they return their signed ap-

plication to the State food stamp office. SSA will revise this instruction so that it will apply only to claimants who appear to qualify for expedited service.

4. SSA will accurately record the number of food stamp applications taken by each SSA field office, to determine whether the field offices are complying with their responsibilities.

5. The MSSICS, POMS, and the Joint Processing Agreement will be modified, clarified or waived to the extent necessary to implement this agreement. As part of that process, the POMS will be amended to state affirmatively SSA's expectation that food stamp applications will be taken from pure SSI households. Defendants will submit a plan to implement such proposed changes, clarifications or waivers to plaintiffs within 120 days of the date of this agreement, and both parties will attempt in good faith to reach final agreement as to these changes within 180 days after the date of this agreement. Should the parties be unable to reach final agreement on the changes within 180 days from the date of the agreement, either party may request the Court to rule upon the issues in dispute.

6. The issues of attorney fees and costs are severed from this agreement, and will be dealt with separately.

7. This document represents the parties' entire agreement entered into for the purpose of settlement of this litigation. Any subsequent modification to this agreement shall be effective only if it is in writing and signed by the parties. However, subject to Paragraph 8 below, nothing in this agreement shall be deemed to waive any right either party may have under the Federal Rules of Civil Procedure with regard to the availability of discovery or the implementation, enforcement or amendment (for example, due to a subsequent change in law) of the Court's order effectuating this agreement. In any application to the Court, the applicant shall certify that counsel for the parties have conferred in a good faith attempt to resolve the matter by agreement.

8. The agreed Order implementing this agreement will provide that the case is ad-

ministratively closed. The Court will retain jurisdiction of this action to enforce the provisions of this Order for five years from the date of its Order, after which time all its provisions shall be terminated, unless the Court, on motion of a party, determines that it is necessary to extend any or all of the requirements imposed by the Order. Once all the provisions of the Order are terminated, the case will be deemed dismissed without prejudice.

9. Except where otherwise specified, the terms of this agreement will be applied by SSA nationally. However, if a court in a State other than Texas should order SSA to adopt procedures or processes or public information items that differ from those agreed to here, after the terms of this agreement have been brought to that court's attention, such order shall take precedence over the terms of this agreement in the jurisdiction(s) in which it is effective. Nothing in this agreement shall be interpreted to restrict SSA's authority to test alternative procedures to perform its joint processing responsibilities in states other than Texas by means of demonstration projects, use of FCS' waiver authority, or other similar initiatives.

/s/ Shimon Kaplan
SHIMON KAPLAN
Texas Bar No. 11095020
East Texas Legal Services, Inc.
P.O. Box 2552
Beaumont, Texas 77704–2552
(409) 835–4971

BURTON FRETZ
National Senior Citizens Law Center
1815 H St., NW, Suite 700

Washington, D.C. 20006
(202) 887–5280

DATE August 29, 1995

Attorneys for Plaintiffs

J. MICHAEL BRADFORD
United States Attorney

/s/ Dane Smith
DANE SMITH
Assistant U.S. Attorney
TEXAS BAR NO. 18556000
110 North College,
Tyler, Texas 75702
(903) 597–8146

DATE September 1, 1995

Attorneys for Defendant
OF COUNSEL FOR DEFENDANT

ARTHUR J. FRIED
General Counsel
RANDOLPH W. GAINES
Acting Principal Deputy
General Counsel
A. GEORGE LOWE
Acting Associate General
Counsel for Litigation
JOHN M. SACCHETTI
Acting Chief, Retirement,
Survivors and Supplemental
Assistance Litigation
Branch
IRA E. ZIPORKIN
Attorney
Office of the General Counsel
Social Security Administration

Approved: [Signature]

Date: May 3, 1996

EXHIBIT A

# FOOD STAMP
## HELP, INFORMATION AND APPLICATIONS AVAILABLE HERE

**GETTING OR APPLYING ONLY FOR SOCIAL SECURITY?**

**YOU CAN GET A FOOD STAMP APPLICATION AND INFORMATION HERE**

We cannot take Food Stamp applications from people getting or applying **only** for Social Security.

**GETTING OR APPLYING FOR SSI?**

**YOU CAN APPLY FOR FOOD STAMPS HERE** IF YOU AND EVERYONE IN YOUR HOUSEHOLD GET OR APPLY FOR SSI.

We will help you fill out the Food Stamp application. You do not have to go to the Food Stamp office to apply

EXHIBIT B

# FOOD STAMP FACTS

The Food Stamp Program helps low-income people buy the food they need to meet their nutritional needs. Although it is a Federal Government program, it is run by local or State agencies. This fact sheet explains who can get food stamps and how to apply for them.

## Who Can Get Food Stamps?

To get food stamps, you and the other people in your household must meet certain conditions.

Everyone in your household must have or apply for a Social Security number and be a U.S. citizen or a legally permanent alien, or other qualified legal alien. Most able-bodied people between 18 and 60 must register for work. Many people may be required to take part in an employment and training program. Some college students may be eligible.

Generally, your household can't have more than $2,000 in resources. But, if your household includes a person 60 or older, the limit is $3,000. Resources include cash, bank accounts, and other property. Not all resources count. For example, your home and the lot it's on don't count. A car or truck counts differently, depending on how it's used. The resources of a person who is receiving SSI are not counted for food stamp purposes.

Most households must also meet an income limit after certain deductions have been subtracted. Your household may qualify for extra deductions if there is a person 60 or older or disabled. The income limits vary by household size and may change each year.

## How Can You Apply For Food Stamps

Food stamp applications are available at any Social Security office. If you and everyone in your household are applying for or are getting SSI payments, any Social Security office will help you fill out the food stamp application

All others must take or send the food stamp application to the local food stamp office. Or, they can take it to any Social Security office if a food stamp worker is there.

When you apply, you also should have:

- Some identification that shows your name and address;

- Proof of earnings or other income, such as Social Security or SSI benefits, or a pension, for each member of your household;

- Proof of how much you spend for child care;

- Rent receipts or proof of your mortgage payments;

- Records of your utility costs;

- Medical bills for those members of your household 60 or over and for those getting Social Security or SSI benefits because they are disabled.

## For More Information

For more information about the Food Stamp Program, contact your Social Security representative or your local food stamp office.

976

EXHIBIT C

# FOOD STAMP
## HELP, INFORMATION AND APPLICATIONS AVAILABLE AT THE SOCIAL SECURITY OFFICE

**GETTING OR APPLYING <u>ONLY</u> FOR SOCIAL SECURITY?**

**YOU CAN GET A FOOD STAMP APPLICATION AND INFORMATION AT THE SOCIAL SECURITY OFFICE**

We cannot take Food Stamp applications from people getting or applying **only** for Social Security.

**GETTING OR APPLYING FOR SSI?**

**YOU CAN APPLY FOR FOOD STAMPS AT THE SOCIAL SECUF OFFICE** IF YOU AND EVERYONE IN YOUR HOUSEHOLD GET OR APPLY FOR SSI.

We will help you fill out the Food Stamp application. You do not have to go to the Food Stamp office to apply.

EXHIBIT D

IMPORTANT MESSAGES FROM YOUR SOCIAL SECURITY OFFICE

IMPORTANT FACTS
ABOUT FOOD STAMPS

* You can apply for food stamps at the Social Security office if you and everyone in your household get or apply for SSI.

* The Social Security office will help you fill out the food stamp application. You do not have to go to the food stamp office to apply.