Richard T. HEIT, on behalf of himself and all other persons similarly situated, Plaintiff,

v.

Marjorie VAN OCHTEN et al., in their official capacities, Defendants.

No. 1:96–CV–800.

United States District Court, W.D. Michigan, Southern Division.

Jan. 8, 2001.

**488**

Elizabeth Alexander, National Prison Project of the ACLUF, Washington, DC, Patricia A. Streeter, Detroit, MI, for Richard Terry Heit.

Anthony Pryor, ICF, Ionia Maximum Correctional Facility, Ionia, MI, pro se.

Mark W. Matus, Jennifer M. Granholm, Attorney General, Corrections Division, Lansing, MI, for Michigan Department of Corrections, Marjorie Van Ochten, Richard Stapleton, Thomas P. D'Haem, Len Denhouter, Alice Florida, Bill Martin, Dan Bolden.

## *OPINION*

ENSLEN, Chief Judge.

This matter is before the Court on three Motions by Plaintiff, all of which the Court will dispose of in this Opinion. Plaintiff filed (1) a Motion for Permission to Withdraw as Counsel for Richard Heit, (2) a Motion to Add Named Plaintiff, and (3) a Motion for Approval of the Proposed Settlement Agreement. Defendants have filed a Brief Concurring in Plaintiff's Motion for Approval of the Proposed Settlement. The Court grants Plaintiff's Motions.

## BACKGROUND

This case began in 1996 when Plaintiff Richard Heit and two other individuals filed a Complaint on "behalf of themselves and all persons similarly situated." The Complaint generally alleged that Michigan prisoners were subjected to unconstitutional State Administrative Prisoner Disciplinary Hearing practices and procedures. Specifically, the Complaint alleged that the Michigan Department of Corrections ("MDOC") kept statistical records of its wins and losses before Administrative Law Judges ("ALJs"). Plaintiff also alleged that the MDOC used disciplinary threats against ALJs to manipulate the conviction rate in prisoner misconduct cases. According to the Complaint, supervisors instructed ALJs to issue not guilty rulings in no more than 10% of the disciplinary cases. The Plaintiffs sought injunctive relief.

In December 1996, the Court denied Plaintiff's Motion for a Preliminary Injunction, and in January 1997 denied Plaintiff's Motion for Certification as a Class Action. After various Motions, the Court appointed counsel, who renewed the Motion for class certification in April 1998. The Court certified the action as a class action in May 1998.

In July 1998, Magistrate Judge Doyle A. Rowland ordered that notice of the pending action be given to the class. The parties engaged in substantial discovery, regulated by several orders from Magistrate Judge Rowland. In March 1999, Magistrate Judge Rowland allowed Plaintiff to amend the Complaint and add parties. In addition, a pretrial conference was scheduled in April 2000, but shortly before that conference, the parties reached a proposed settlement. In May 2000, the Court ordered that notice of the Proposed Settlement be given to the class, and the class be given a deadline by which to file any objections to the Proposed Settlement.

## DISCUSSION

### A. Motion for Approval of the Proposed Settlement

When evaluating a proposed class settlement, a court looks to whether the proposed settlement is fair, adequate, reasonable, and consistent with the public interest. *See Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir.1990). The four factors that assist a court in determining whether a proposed settlement is fair, adequate and reasonable are: (1) the strength of the class's case compared to what is offered in the proposed settlement, (2) the presence or absence of collusion, (3) the reaction of the class members, and (4) the stage of the proceedings and the amount of discovery completed. *See Akkala v. Lake Shore, Inc.*, No. 95–1400, 1996 WL 166736, at *1 (6th Cir. April 9, 1996), quoting *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir.1982); *see also* James Wm. Moore et al., *5 Moore's Federal Practice* ¶ 23.85(2)(a) (3d ed.1999). Case law indicates that included in the Court's discretion to accept a proposed settlement is the Court's ability to review the views and experience of a plaintiff's counsel. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998); *see also Petruzzi's, Inc. v. Darling–Delaware Co., Inc.*, 880 F.Supp. 292 (M.D.Pa.1995).

### 1. Strength of the Class's Case Compared to what was Offered in the Settlement

The Complaint alleges that Defendants have a policy or custom of coercing or interfering with hearing officers to assure findings of guilt in prisoner misconduct hearings, and this policy or custom deprives prisoners of procedural due process by denying them an impartial decision-maker. The Complaint further alleges that the lack of an impartial decision-maker results in arbitrary and irrational decisions.

The Complaint describes the policy as a standard expectation that no more than 10% of prisoner misconduct charges would result in dismissals or findings of not guilty. Allegedly, wardens communicate *ex parte* to the Office of Policy and Hearings ("OPH") supervisors their disagreements with dismissals and findings of not guilty. In addition, the Complaint alleges that hearing officer supervisors keep statistics on the percentage of hearings resulting in dismissals and not guilty findings. The class also alleged that supervisors apply an unwritten policy that a prisoner is not to be found more credible than staff when statements of the two directly conflict and no independent evidence exists supporting the prisoner's statement. The Complaint describes the policy as placing pressure on hearing officers to call a supervisor before a difficult decision and claims the rehearing process is used to enforce the unwritten policy of automatically discounting a prisoner's credibility.

Plaintiff hired Vincent Nathan, who has worked as a lawyer, law professor, and a "special master in significant prison litigation." Mr. Nathan recommended that any proposed remedy address the following:

1. Ceasing to keep statistics regarding hearing officers' percentages of acquittals and dismissals, and these rates should play no role in the performance evaluation or retention of hearing officers.

2. Institutional staff should be prohibited from contacting OPH staff regarding determinations made by a hearing officer. Criticism of a hearing officer's evaluation of credibility, without more, should not be a basis for ordering a rehearing.

3. OPH staff should limit their communication to wardens and other institutional staff regarding disciplinary decisions by a hearing officer to those relevant to the rehearing process.

4. OPH staff should maintain a record of prohibited communications, and these

prohibited communications should be the basis for disciplinary action against the offending employee.

5. OPH staff should instruct hearing officers to make individualized determinations of credibility of staff and inmate oral or written testimony. Hearing officers should not automatically credit officers' statements over those of prisoners.

The Proposed Settlement Agreement addresses many of Mr. Nathan's concerns. The Proposed Settlement forbids Defendants from keeping statistics on the guilty, not guilty, or dismissal rates of individual hearing officers. The Proposed Settlement also prohibits Defendants from threatening a hearing officer with personnel disciplinary action, in whole or in part, because of the percentage of the hearings resulting in a finding other than guilty.

The Proposed Settlement also addresses Mr. Nathan's concerns regarding communication between OPH staff and MDOC staff, as well as his recommendation that OPH staff maintain a record of these communication attempts. The Proposed Settlement does not allow MDOC staff to communicate with OPH staff regarding a hearing decision outside of the rehearing process, although this does not prohibit OPH staff from training MDOC staff by using references to decisions in particular hearings. In addition, the Proposed Settlement mandates the OPH staff log any communications or attempts to communicate in violation of the policy barring communications outside of the rehearing process.

Finally, the Proposed Settlement directs hearing officers to refrain from automatically crediting the testimony of staff over that of a prisoner. Furthermore, hearing officers will be required to make credibility determinations and set forth the evidence relied upon to make such determinations.

Aside from Mr. Nathan's concerns, the Proposed Settlement also gives the class one year from the effective date of the prospective Policy Directives to petition to reinstate this case on the ground that Defendants have committed a material breach of their undertakings in the Proposed Settlement. The Proposed Settlement also specifically states that it does not preclude an individual class member from filing separate litigation seeking relief from a finding of guilt and any sanctions imposed in a prisoner disciplinary misconduct hearing. Neither does the Proposed Settlement entitle any individual class member to any relief or compensation not specifically set forth in the agreement. The Proposed Settlement states that Defendants shall pay the reasonable attorney fees and costs incurred by the class.

The Proposed Settlement does not provide permanent injunctive relief, which was a relief requested in the Complaint. The provisions allowing the class to refile within one year if Defendants breach their undertakings in the Proposed Settlement and allowing an individual class member to challenge in court a finding of guilt or a particular punishment imposed seem to address this type of relief. Furthermore, the Court finds the fact that the relief will be formally incorporated into official MDOC Policy Directives gives some assurance that the Proposed Settlement will be enforced.

The Court has considered the strength of the class's case. First, the Court recognizes the inherent uncertainty of litigation. It is impossible to foretell what the outcome of a trial in this case would be. Second, the class complains of unwritten policies, and unwritten policies are exceedingly more difficult to prove than written policies. Third, it is difficult for the Court to ascertain what, if any, reasons may exist for the various findings of guilt or punishments other than those alleged by the class. Therefore, it appears that the certainty of a settlement is in the class's interest when compared to the strength of the class's case.

## 2. Collusion

Inquiries into possible collusion between any of the parties address two issues: (1)

whether the named plaintiff's claims are treated more favorably then other plaintiffs' claims, and (2) whether the fee agreement suggests collusion. *See 5 Moore's Federal Practice* ¶ 23.85(2)(c). In this case, Richard Heit, the named Plaintiff, does not receive relief distinct from the relief provided to the class. In addition, the fee clause indicates that Defendants will pay reasonable attorney fees and costs to be determined later. If the parties cannot agree on reasonable fees and costs, the Court will make this determination.

These factors do not suggest collusion. Furthermore, the discovery in this case seemed to be fraught with battles, one of which ended with the imposition of discovery sanctions against Defendants. The Proposed Settlement appears to be fair, adequate, reasonable, and in the class's interest. Collusion simply is not supported by the facts and circumstances.

### 3. Reaction of the Class

The Court is well aware of the many objections filed by individual class members. According to figures obtained from MDOC, the class numbered 45,879 as of October 6, 2000. The Court has attempted to count the number of class members who objected to the Proposed Settlement. Although it was difficult to determine the exact number of objections filed because some class members filed more than one objection, the Court agrees with Plaintiff counsel's estimate that approximately 824 class members objected to the Proposed Settlement. This means than less than two percent of the class filed objections.[1]

Even a majority opposition to a proposed settlement does not automatically bar court-approval of a proposed settlement. *See Thomas v. Albright*, 139 F.3d 227, 232 (D.C.Cir.1998)(court approved a settlement despite fact that 15% of class opposed it); *5 Moore's Federal Practice* ¶ 23.85(2)(d). The small percentage of

class members objecting to this Proposed Settlement, on the other hand, supports the Court's approval of it.

### 4. The Stage of the Proceedings

This case was settled shortly before trial and after the close of discovery. Nothing indicates that the parties or their counsel were less than well-informed about the particulars of this case. Rather, each party had the benefit of discovery material to assist it in drafting and reviewing the Proposed Settlement. Moreover, Plaintiff's counsel hired an expert with whom she worked closely in reviewing the Proposed Settlement. These factors suggest that the parties arrived at a compromise based on their full understanding of both the factual and legal issues surrounding this case. This supports approval of the Proposed Settlement. *See e.g., In re Fleet/Norstar Sec. Litig.*, 935 F.Supp. 99, 106 (D.R.I.1996); *see also In re Marine Midland Motor Vehicle Leasing Litig.*, 155 F.R.D. 416, 420 (W.D.N.Y.1994); *Manchaca v. Chater*, 927 F.Supp. 962, 966 (E.D.Tex.1996).

### 5. The Public Interest

The Court finds that nothing within the Proposed Settlement is inconsistent with public interest. Rather, the Proposed Settlement will help ensure that Michigan prisoners receive due process with respect to their disciplinary hearings. The Proposed Settlement also prohibits Defendants from threatening hearing officers with, or subjecting them to, personnel disciplinary actions based on the number of hearings resulting in dismissals or findings of not guilty. These measures are all in the public's interest.

### B. Class Member Objections

The Court has considered all timely filed

---

1. The Court notes that the named Plaintiff, Richard Heit, objected to the Proposed Settlement even though he had orally agreed to it.

The Court will address the class members' objections later.

objections from individual class members.[2] Although the class members objected on various grounds, most of their objections can be placed into one of five categories.

### 1. Failure to Provide for Reversal or Damages

The most frequent objection was the failure of the Proposed Settlement to provide that past hearing results would be reversed or damages awarded to class members injured from previous biased hearings.

The Supreme Court in *Edwards v. Balisok*, 520 U.S. 641, 645, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), addressed a prisoner's 42 U.S.C. § 1983 case challenging the procedures used in certain prison disciplinary proceedings. The prisoner did not ask for the return of the good time he lost, but he did ask for a declaration that the procedures were illegal, an injunction to prevent future violations, and damages. *Id.* The Supreme Court recognized that the prisoner claimed that the hearing officer was biased against him but ultimately held that the prisoner could not seek damages on this claim without first having the misconduct hearing overturned in state court pursuant to *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *See Edwards*, 520 U.S. at 648, 117 S.Ct. 1584. The Supreme Court allowed injunctive relief to proceed provided that the injunctive relief did not necessarily imply that any particular disciplinary proceeding was invalid. *See id.*

Moreover, in *Sandin v. Conner*, 515 U.S. 472, 486, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that 30 days of disciplinary confinement did not trigger protection under the due process clause. Rather, only disciplinary confinement involving "atypical, significant" deprivation implicates due process. *See id.*

Based on these two cases, it appears that the class could not seek, in this action,

expungements, reversals, or damages for hearings that resulted in loss of good time. In addition, it is questionable whether some of the class members experienced "atypical, significant" deprivations implicating due process. While the Court certainly understands the class members' desires *to obtain expungement, settlement of* the class action is not the appropriate vehicle to do so. No class member, however, is enjoined from seeking relief in an individual action.

### 2. Relief is Ineffective

Some class members objected because they deemed the relief ineffective as it was not incorporated into an injunction and because Defendants cannot be trusted to carry out their obligations under the Proposed Settlement. The Proposed Settlement appears to be drafted according to the Prison Litigation Reform Act, 18 U.S.C. § 3626(a), which places some significant restrictions on the form of settlements in prison condition cases. In addition, the Proposed Settlement allows the class to refile their complaints if Defendants do not fulfill their obligations within one year of the enactment of Policy Directives. Class members are also able to challenge their disciplinary hearing results in state court, and this gives assurance that Defendants will be unable to ignore their obligations under the Proposed Settlement.

### 3. The Provision Prohibiting Automatic Credit be Given to Reporting Officers Cannot be Enforced

Many class members object because they do not believe it is possible to enforce the provision mandating that hearing officers make credibility determinations and refrain from giving report officers automatic credit. Class members also worry that hearing officers remain biased or corrupt.

---

**2.** At Plaintiff counsel's urging, the Court looked at all later objections as well. The

Court found, however, that these late objections were similar to those timely filed.

While the Court appreciates the class's concerns, especially given their past experience with hearing officers, the Court also notes that this provision would be difficult to enforce even if it were incorporated into an injunction. Regardless of whether a prisoner challenges the settlement in a contempt proceeding or challenges a hearing outcome in state court, it would be difficult to enter the mind of the hearing officer to ascertain whether he or she maintained some bias against prisoners. The Proposed Settlement attempts to counter this by requiring hearing officers to set forth in the hearing report the evidence relied upon in determining credibility. This should assist a court in reviewing a hearing officer's decision. Furthermore, if there exists an outward manifestation of bias, hearings are subject to review in state court.

### 4. *Perry* Mandates that More Relief Should be Given

Many objectors noted *Perry v. McGinnis*, 209 F.3d 597 (6th Cir.2000), wherein a former hearing officer filed suit alleging that he suffered adverse personnel action because of his race, and his First Amendment right to speak had been violated. *Perry*, 209 F.3d at 600. The District Court dismissed Mr. Perry's First Amendment claim, and the Sixth Circuit reversed, stating that overwhelming evidence suggested "*at the very least*, a strong expectation that the nonguilty/dismissal rate should not rise above 10%." *Id.* at 606. The Sixth Circuit further stated that hearing officers cannot be impartial as required by *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), if they focus on finding 90% of the prisoners be-fore them guilty. *See Perry*, 209 F.3d at 606.

The Court notes, however, that the Sixth Circuit did not grant judgment to Mr. Perry, but it merely reversed the defendants' motion to dismiss and remanded the case for trial. Mr. Perry's claim involved his employment from 1988 until 1993, whereas this suit alleges that the wrongful conduct began in 1990. Although these times overlap, the policies or "pressure" exerted on hearing officers are not necessarily the same. Furthermore, the remand does not mean that Mr. Perry will succeed, nor does it mean that the court will find that MDOC practices violate prisoners' rights.

Regardless of *Perry*, the Proposed Settlement appears to be fair, adequate, and reasonable. It also appears to be in the class's best interest. It ensures the class of positive changes within MDOC Policy and also provides the class with a means of enforcing the Proposed Settlement by further court action if necessary.

### 5. Various Issues were not Addressed

Some class member object to the Proposed Settlement because it does not address certain issues such as the rehearing process, various hearing procedures, and appeals of special designations. These issues are not within the Complaint's scope. Nothing in the Proposed Settlement, however, prejudices any class member from pursuing other legal claims on these issues.

Nothing in any of the objections provides a reason for disapproving the Proposed Settlement.[3] The Court finds the

---

**3.** The Court notes that courts generally hold "fairness hearings" before approving a proposed settlement agreement in a class action. The purpose of these hearings is to allow those affected by the settlement to be heard with respect to its fairness. *See Williams v. Vukovich*, 720 F.2d 909, 924 (6th Cir.1983). Fairness hearings are not required, however, if the record is adequate and the objectors fail to raise cogent objections to the settle-ment. *See Malchman v. Davis*, 706 F.2d 426, 434 (2nd Cir.1983); *see also Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615, 624–25 (9th Cir.1982)("members raising substantial objections must be afforded an opportunity to be heard with the assistance of privately retained counsel if so desired, and a reasoned response by the court on the record; and objections without substance ... require

Proposed Settlement to be fair, adequate, reasonable, and in the class's interest. Therefore, the Court approves the Proposed Settlement.

### C. Motion for Permission to Withdraw as Counsel for Richard Heit

■ Plaintiff's counsel seeks to withdraw from representing Richard Heit because he filed objections to the Proposed Settlement after orally approving the Proposed Settlement. Plaintiff's counsel relies on the Model Code of Professional Responsibility and the *Manual for Complex Litigation (Third)* § 30.43 (1995) to support her argument that she should withdraw as Richard Heit's counsel because of her independent duty to the class. Plaintiff's counsel believes that the Proposed Settlement agreement is in the class's interest, and she cannot advocate on behalf of Plaintiff's objections.

■ The Sixth Circuit has not spoken directly on this issue, but has stated that accepting a settlement over the objections of the named representatives is not necessarily an abuse of discretion. *See Laskey v. International Union, United Auto., Aerospace and Agr. Implement Workers of America (UAW)*, 638 F.2d 954, 957 (1981). Other Circuits, however, have spoken on this issue. In *Kincade v. General Tire and Rubber Co.*, 635 F.2d 501 (5th Cir. 1981), the named class members appealed from an entry of a settlement agreement negotiated by their attorney, arguing that the attorney acted without their authorization. The Fifth Circuit held that it may be impossible for a class attorney to "do more than act in what he believes to be the best interests of the class as a whole[.]" *Id.* at 508. The Fifth Circuit has also stated that the duty owed by class counsel is to the "entire class and is not dependent on the

special desires of named plaintiffs." *Parker v. Anderson,* 667 F.2d 1204, 1211 (5th Cir.1982)(affirming approval of settlement even though ten of eleven class representatives rejected it). The *Parker* court reasoned that a named plaintiff should not "be permitted to hold the absentee class hostage by refusing to assent to an otherwise fair and adequate settlement in order to secure [his] individual demands." *Id.*

The Fourth Circuit recognizes that an original plaintiff should be given an opportunity to retain new counsel to represent him or her in objecting to the settlement. *See Flinn v. FMC Corp.,* 528 F.2d 1169, 1174 (4th Cir.1975). The Second Circuit has held similarly, stating that if the named plaintiff objects to settlement, class counsel must so inform the court so that the named plaintiff can pursue his or her objections with a new lawyer. *See Saylor v. Lindsley,* 456 F.2d 896, 900 (2nd Cir. 1972).

Recognizing Plaintiff counsel's duty to the class, it appears she cannot represent Richard Heit because he objects to the Proposed Settlement, which Plaintiff's counsel argues is in the class's interest. The Court also finds that the Proposed Settlement is in the class's interest. Mr. Heit should have the opportunity to pursue his objections with a new lawyer if he so chooses. As such, the Court grants Plaintiff counsel's Motion to Withdraw as Mr. Heit's counsel.

### D. Motion to Add Named Plaintiff

■ Plaintiff's counsel seeks to add Joseph Corsetti as class representative. Plaintiff's counsel asserts that Mr. Corsetti is an experienced "jail house lawyer" with the appropriate judgment and experience to represent the class well. Plaintiff's

---

only a statement on the record of the reasons for so considering the objection.") (citations omitted). The Court finds that hearings in this case would be impractical given the size of the class, and they are not necessary. Recognizing the importance of the class's opportunity to be heard regarding the Proposed

Settlement's fairness, however, the Court considered the class's objections. Thus, all class members who deemed the Proposed Settlement unfair had the opportunity to express this, and the Court considered this when evaluating the Proposed Settlement.

counsel seeks to add Mr. Corsetti as class representative because Plaintiff Heit filed objections to the proposed settlement agreement after approving it following the parties' negotiations.

The Supreme Court has stated that a court can re-examine a named plaintiff's ability to represent the class, and if it is "found wanting, the court may seek a substitute representative.." *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 416, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); Fed. R. Civ. Proc. 23(c)(1), 23(d); *see also Robinson v. Sheriff of Cook County,* No. 95 C 2205, 1996 WL 417559, *1 (N.D.Ill. July 22, 1996)(allowing addition of plaintiff as representative because proposed representative was inadequate).

In this case, it seems apparent that Mr. Heit's ability to represent the class is wanting and inadequate. Mr. Heit's two written objections to the Proposed Settlement contain mostly the objections addressed in this Opinion. Mr. Heit's objections also make it clear that he absolutely opposes the Proposed Settlement. Yet, a thorough review of the Proposed Settlement by the Court indicates approval is appropriate and in the class's best interest. Having found Mr. Heit's ability to represent the class wanting and inadequate, the Court therefore grants Plaintiff's counsel's Motion to add Mr. Corsetti as the named Plaintiff.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Motion for Approval of the Proposed Settlement Agreement, Plaintiff counsel's Motion to Withdraw as Counsel for Richard Heit, and Plaintiff counsel's Motion to Add Named Plaintiff.